IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA


- - - - - - - - - - - - - X
UNITED STATES OF AMERICA, :
                          :
     Plaintiff,      :
                          :
vs.                  :       Criminal No. 4:15-cr-103
                          :
JESSE R. BENTON, JOHN M. :
TATE, DIMITRIOS N. KESARI,:     HEARING TRANSCRIPT
                          :
     Defendants.     :
- - - - - - - - - - - - - X


Chambers, Fourth Floor
U.S. Courthouse
123 East Walnut Street
Des Moines, Iowa
Monday, August 17, 2015
10:30 a.m.


BEFORE:  THE HONORABLE HELEN C. ADAMS, Magistrate Judge


- - -


THERESA KENKEL - CERTIFIED SHORTHAND REPORTER

APPEARANCES:

| | |
|---|---|
| For the Plaintiff:<br>  (By Phone) | JONATHAN I. KRAVIS, ESQ.<br>U.S. Department of Justice<br>  Criminal Division<br>10th & Constitution Avenue NW<br>John Keeney Building<br>Washington, DC  205030 |
| | RICHARD CHRISTIAN PILGER, ESQ.<br>U.S. Department of Justice<br>1400 New York Avenue NW<br>Suite 12100<br>Washington, DC  20005 |
| For Defendant Benton:<br>  (By Phone) | ROSCOE C. HOWARD, JR., ESQ.<br>MEENA T. SINFELT, ESQ.<br>Barnes & Thornburg, LLP<br>1717 Pennsylvania Avenue NW<br>Suite 500<br>Washington, DC 20006 |
| For Defendant Tate:<br>  (By Phone) | DAVID ALAN WARRINGTON, ESQ.<br>PARIS R. SORRELL, ESQ.<br>LeClair Ryan, PC<br>2318 Mill Road<br>Suite 1100<br>Alexandria, Virginia 22314 |
| For Defendant Kesari:<br>  (By Phone) | JESSE RYAN BINNALL, ESQ.<br>SUSANNAH EATON SMITH, ESQ.<br>Harvey & Binnall, PLLC<br>717 King Street<br>Suite 300<br>Alexandria, Virginia 22314 |
| For Google, Inc.:<br>  (By Phone) | GUY R. COOK, ESQ.<br>Grefe & Sidney, PLC<br>500 E. Court Avenue<br>Suite 200<br>Des Moines, Iowa 50309 |
| | JOHN K. ROCHE, ESQ.<br>Perkins Coie, LLP<br>700 Thirteenth Street NW<br>Washington, DC 20005 |

1                    P R O C E E D I N G S

2          THE COURT:  Good morning.  This is Judge Adams.  And

3   who do I have on the phone on behalf of the Government this

4   morning?

5          MR. KRAVIS:  Good morning, Your Honor,  Jonathan

6   Kravis and Richard Pilger on behalf of the United States, and I

7   will be arguing the motions for the Government.

8          THE COURT:  All right.  Thank you, Mr. Kravis.

9          And then who do I have on the line on behalf of

10  Defendant Benton?

11         MR. HOWARD:  Good morning, Your Honor.  This is Roscoe

12  Howard, and I'm here with Meena, M-e-e-n-a, Sinfelt,

13  S-i-n-f-e-l-t.

14         THE COURT:  All right.  Thank you.

15         And then do we have anybody on the line on behalf of

16  Defendant Tate?

17         MR. WARRINGTON:  Yes, Your Honor.  This is David

18  Warrington, W-a-r-r-i-n-g-t-o-n, and I have with me Paris

19  Sorrell, S-o-r-r-e-l-l.

20         THE COURT:  All right.  Thank you.

21         And how about on behalf of Defendant Kesari?

22         MR. BINNALL:  Good morning, Your Honor.  Jesse

23  Binnall, last name is B-i-n-n-a-l-l, and I'm joined here by

24  Susannah Smith.

25         THE COURT:  Thank you.

1          Do I have anybody else that I missed by any chance?

2          MR. COOK:  Your Honor, this is Guy Cook here on behalf

3  of Google, as well as John Roche, who I put on a motion for pro

4  hac vice last week.

5          THE COURT:  I'm sorry, Mr. Cook.  You went out a

6  little bit there.  Who's with you?

7          MR. COOK:  John Roche who I put a motion on for pro

8  hac vice admission last week with my appearance.

9          THE COURT:  All right.  Thank you.

10          All right.  We do have a couple of motions that I

11  wanted to talk with you about, and to give you all an

12  opportunity to make a record.

13          Can you hear me okay?  I can hear some feedback.

14          MR. COOK:  We're hearing you fine, Your Honor.

15          THE COURT:  All right.  I want to give you all an

16  opportunity to make a record with respect to the motions.  So

17  let me just indicate what we have here, and I'll tell you what

18  I've had an opportunity to review as well.

19          I have a motion that the Government filed.  I have the

20  Government's motion to compel immediate production and to show

21  cause why Google should not be held in contempt, and that motion

22  was filed on 8-3.

23          I have Google's resistance to that motion.  That was

24  filed on 8-14.  I also have with that, related to that same

25  motion--let me just make sure here.  I also have the

1    Government's reply with respect to that motion as well.

2            So you all know exactly what I have, and what I've had

3    an opportunity to, at least, briefly review before our call this

4    morning, but I wanted to get the call on early this week, given

5    the status of the proceedings, so that we could keep things

6    moving.

7            I also have a motion for temporary relief from the

8    order denying the motion to quash the search warrant, and that

9    one was filed on 8-12.  And I have the Government's opposition

10   to that motion for temporary relief.

11           And then lastly I have the Government's motion for a

12   protective order that was filed on 8-13.  I have the defendants',

13   Benton, Tate, and Kesari's, opposition to that motion for a

14   protective order, and I also have the Government's reply to that

15   opposition.  And both of those last two documents were filed on

16   8-14.

17           I think maybe what makes sense, and I'll give you guys

18   an opportunity if you have a different order that you think

19   makes sense, I think what might make sense for me would be for

20   the parties to maybe argue the motion for temporary relief

21   first, and then we can have the parties do any additional

22   argument that they would like to do with respect to the other

23   two motions filed by the Government.

24           Does that order make sense to all of you?

25           MR. KRAVIS:  Yes, that's fine for the Government.

1    Thank you.

2         MR. COOK:  That's fine with us, Your Honor.

3         THE COURT:  All right.  Well, let's go ahead and do

4    that, then.  We'll go ahead and have argument from the parties

5    with respect to the motion for temporary relief from the order

6    denying the motion to quash the search warrant.

7         So, Mr. Howard, is that going to be you?

8         MR. HOWARD:  That will be me, Your Honor.

9         THE COURT:  All right.  Go ahead.

10         MR. HOWARD:  Your Honor, initially I think what we

11   have in our filings are sufficient, but things to point out,

12   Google had attached to its motion communication from Karen

13   LoStracco, a Government FBI agent, and clearly they had

14   permission to contact us given to them by the Government.  So

15   the Government's representations that they didn't know how we

16   were contacted were simply misrepresentations to the Court.

17         With that, it's clear that under 2704 we have--first,

18   Google, under 2704(a)(4)(A), clearly can resist.  But more

19   importantly for this motion, under 2704(a)(5)(B), we have the

20   absolute right to challenge it, and we have the absolute right

21   to challenge an order.  And that is something we actually

22   pointed out in our earlier motions, it's something that the

23   Government continually refers to.  But clearly us not knowing,

24   and the Government not being forthcoming and letting folks know

25   that they had given permission to Google under 2704 to go

1  forward and notify us, we relied on what we still think is the

2  ultimate statute, and that is the Fourth Amendment.  And we do

3  have the right to be secure in our personal effects, we do have

4  the right to have a search warrant that is supported by probable

5  cause.

6       According to 2704(b) we have 14 days from your order

7  to appeal, which we are intending to do.  We think the right is

8  there.  It is--the statute makes it clear, the Fourth Amendment

9  makes it clear, and we should be allowed to go forward, then.

10 We will try to do that with as much haste as possible.

11      THE COURT:  Mr. Howard, I don't have a copy of the

12 order in front of me.  Can you tell me what that--do you know

13 what the deadline would be for that 14-day period?  I just don't

14 have that in front of me here.

15      MR. HOWARD:  Hold it.  I have it.

16      THE COURT:  Okay.  Thank you.

17      MR. HOWARD:  Your Honor, I think your--hold it.  We

18 believe the date will be the 24th, Your Honor.

19      THE COURT:  Okay.  So that's next Monday.

20      MR. HOWARD:  Yes, ma'am.

21      THE COURT:  Okay.  All right.  Thank you.

22      Okay.  With respect to the Government's position,

23 then, Mr. Kravis, are you ready?

24      MR. KRAVIS:  Yes.  Thank you, Your Honor.  I just

25 wanted to make two brief points in support of the Government's

1  position.  The first is that the Government in its pleadings is

2  not alleging that Google or Mr. Benton did anything wrong with

3  respect to the handling of these warrants.  So to the extent

4  that Google, for example, in its pleadings, or Mr. Benton in his

5  pleadings, argues about the propriety of not producing the

6  documents, in light of the litigation the Government is not

7  disputing any of that.  And the purpose of the Government's

8  pleadings in this matter is not to ask the Court to rule on the

9  propriety of Google's conduct to this point.  It is, instead,

10  just to get the documents that we believe we're entitled to

11  under the warrant.

12         The second point I wanted to make was that the only

13  real argument that either Mr. Benton or Google makes in support

14  of the motion for temporary relief is that Mr. Benton will

15  suffer some sort of irreparable harm if the Court denies the

16  motion for temporary relief and allows the Government to execute

17  the warrant on Google because then the Government will already

18  have--will have access to the records, and Mr. Benton will not

19  be able to unring the bell, so to speak.

20         And the reason that is not a persuasive argument, and

21  the reason that this Court should not grant a stay based on that

22  argument is that this motion to quash, motion to stay

23  litigation, is just not a proper procedural vehicle for

24  Mr. Benton to obtain relief.  As the Government has argued over

25  and over again, Mr. Benton just does not have the lawful

1  authority to ask the Court to quash a warrant that has been

2  signed by another judge who has found probable cause and found

3  that the warrant is otherwise lawful.  And the Government cited

4  in support of that position, among other cases, the recent

5  Supreme Court case of United States versus Grubbs.

6       I think the law is clear that Mr. Benton's remedy at

7  this point is to file a motion to suppress in the criminal case.

8  And while it is true that a motion to suppress means that the

9  Government will be allowed to execute the search warrant and

10 obtain the documents, that is just how search warrants work, and

11 there is nothing particularly uncommon or unusual about that.

12      Mr. Benton's upfront protection is the Fourth

13 Amendment's requirement that the Government obtain a warrant

14 based on probable cause, which it's done.  But once the

15 Government's obtained that warrant, Mr. Benton's only remedy is

16 to file a motion to suppress after the evidence has been

17 collected.

18      To this point Mr. Benton has had an opening memorandum

19 in support of his motion, a reply in support of the motion, a

20 letter brief filed in the Government's motion to unseal, a

21 motion for temporary relief, and Mr. Benton still has not

22 managed to cite a single case from any jurisdiction in which a

23 court did what Mr. Benton is asking this Court to do, which is

24 to quash a warrant that's already been signed by another judge

25 for lack of probable cause before the warrant is executed.  And

1 the fact that--a court of competent jurisdiction.

2    And the fact that Mr. Benton cannot find any authority

3 to support that proposition means that the Court should not

4 grant the stay when Mr. Benton can't even explain what exactly

5 it is that he's asking the Court to do, or what his legal basis

6 is for asking the Court to do it.

7    A moment ago, and this is the last point I'll make,

8 Mr. Howard cited 18 USC 2704(a)(5)(B) and claims that that

9 provision of the Stored Communications Act allows the Court to

10 quash the warrant.  But that is just wrong as we litigate it in

11 the context of the original motion to quash the warrant.

12    The Stored Communications Act provides for the

13 Government to access electronic materials through three

14 different legal processes:  A warrant, a court order, and an

15 administrative subpoena.  And the provision that Mr. Howard

16 cites says that a subscriber can move to ask the Court to quash

17 a court order or an administrative subpoena.  The provision does

18 not allow a subscriber to move to quash a warrant, and the

19 statute is very specific in distinguishing between warrants,

20 court orders, and administrative subpoenas, and that is not

21 merely a formalistic distinction.

22    The Act provides for different levels of proof and

23 different procedural requirements for the Government to obtain

24 each of those three orders--or each of those three means of

25 legal process.

1           And once the Government has obtained a warrant, which

2   has the most stringent requirement of probable cause before a

3   neutral and detached magistrate, a subscriber may not move to

4   quash the warrant before it is executed.  The subscriber's

5   remedy is a motion to suppress after the fact.

6           And, of course, the Government agrees with Google,

7   that as its service provider, Google may come to court and ask

8   the Court to modify a warrant if the warrant is unduly

9   burdensome.  But just because Google can move to modify a

10  warrant, that does not mean Mr. Benton can move to quash a

11  warrant on those grounds.

12          Thank you.

13          THE COURT:  One question for you, Mr. Kravis.  In the

14  motion that was filed on behalf of Mr. Benton, an alternative

15  request is that the period of time for the search warrant be

16  limited to the time period of March 1, 2011, through July 2,

17  2014, the date the search warrant was served on Google.  Can you

18  tell me what the Government's position is with respect to that

19  issue?

20          MR. KRAVIS:  Through July 2nd of 2014?

21          THE COURT:  Correct.

22          MR. KRAVIS:  Well, the Government's initial position

23  is that that issue, the issue regarding the limitations on the

24  warrant, and the scope of the warrant, was already decided by

25  Magistrate Judge Shields when he signed the warrant, and that

1 there's no basis now for Mr. Benton to come back and ask another

2 judge to--with all due respect to Your Honor, to ask another

3 judge to modify Judge Shields' determination just because

4 Mr. Benton disagrees with what Judge Shields decided.

5        If the Court were inclined to revisit the parameters

6 in the warrant, the Government would--the Government would be

7 amenable to limiting further the date in the warrant.  I would

8 point out that in this case there are allegations related to

9 obstruction of justice that go on beyond the dates of the

10 substantive underlying conduct.

11        THE COURT:  All right.  Okay.  Thank you.

12        Mr. Howard, I'll give you a couple minutes if you have

13 any additional points you wanted to raise with respect to that

14 motion.

15        MR. HOWARD:  Yeah, Your Honor.  And just so you

16 understand, when we put the dates in there, we were--the warrant

17 was--said that they had to provide documents up until the date

18 served, and there was--there was simply no definition of what

19 that date was.  There was no date there.  And the date that we

20 put in there was the date that Google received the warrant.  And

21 so that's the date we think it should be limited to.

22        I'll also point out that we had just gotten discovery,

23 and from what we can tell, at one point, Your Honor, we had

24 given the Government permission to go through our documents.  I

25 ended up rescinding that permission 24 hours after my client had

1   agreed to it.  But I will point out that one of the things we

2   are able to tell from this discovery is that they did do a

3   search, and their agent not only did a search, but they did a

4   search of my e-mails.  They went through attorney e-mails.

5         And so, Your Honor, they did not use a taint team.

6   There is no indication that they have any appreciation for a

7   taint team.  And from what I remember from Mr. Kravis' first

8   argument, and from what I'm hearing today, basically they're

9   saying they need to go and want to go through everything and,

10  essentially, if you will, Your Honor, they want the parameters

11  of a general warrant.

12        We understand that Judge Shields has gone through it

13  once before, but if you--but when you look at 2704, as you look

14  at the end, 2704(b)(4), they talk about the Court ordering the

15  process being quashed.  They don't talk about anything in

16  particular.  And in this case, obviously you have issued an

17  order, and then--and so we think 2704 actually is applicable in

18  this situation.

19        And, regardless, when you look at the Fourth

20  Amendment, I certainly don't think Mr. Kravis is suggesting that

21  the Fourth Amendment be trumped by any case or any--or any other

22  statute.  And it clearly says that we have the right to be

23  secure in our effects.  It doesn't say when we have to look for

24  redress on a violation of those rights.  And usually--he is

25  right, we don't learn about search warrants.  In this case we

1  did, and there is nothing that says we need to sit back under

2  the Fourth Amendment and wait until those rights are trampled

3  before we look for some sort of address to them.  And so that's

4  why we're here.

5          THE COURT:  Thank you.

6          MR. KRAVIS:  I'm sorry.  Your Honor, I apologize.  May

7  I be heard briefly on the date range point?  I think I had not

8  correctly understood the question the Court was asking.

9          THE COURT:  All right.  And this is Mr. Kravis?

10          MR. KRAVIS:  Yes.  Yes.

11          THE COURT:  Go ahead.

12          MR. KRAVIS:  I'm sorry, Your Honor.  For purposes of

13  the execution of the warrant, the Government will agree that the

14  date of execution on the warrant would be the date that the FBI

15  served the warrant on Google, which I think addresses the point

16  about the date range.  I agree with Mr. Howard on that point.

17          THE COURT:  All right.  Thank you.  I'm just making a

18  note here.  All right.

19          Why don't we go ahead and talk about the Government's

20  motions, then.  And, Mr. Kravis, I'm going to let you go ahead

21  and start that, and you can discuss them together, or whatever

22  you think makes the most sense from your perspective, and then

23  I'll let the other parties respond, okay?

24          MR. KRAVIS:  Yes, Your Honor.

25          On the Government's motion to compel, I think we've

1  already hashed out the substantive points in the context of the

2  argument on the motion for a stay.  I would just reiterate

3  today, to the extent that Google's opposition devotes some pages

4  to arguing for the propriety of Google's conduct, that the

5  Government is not arguing to the Court that Google has in any

6  way acted improperly in this matter.  The Government is not

7  seeking sanctions against Google now, the Government is not

8  seeking a contempt order now.

9          The Government's contempt request would be only in the

10 alternative, should the Court issue an order requiring the

11 production of documents, and Google refusing to comply.  I

12 mention that only because Google mentioned several times their

13 reasons for declining to produce the documents at various dates.

14 I just want to make sure the Court understands that the

15 Government is not asking the Court to go back and rule on the

16 propriety of the past conduct.

17         THE COURT:  All right.

18         MR. KRAVIS:  With respect to--I would submit that the

19 motion to compel should be granted for the same reasons that the

20 motion for the temporary stay should be denied, which is that

21 there's really just no lawful process that allows Mr. Benton to

22 challenge the signed warrant before it has been executed.

23         And because there is no such process available, and

24 because we believe that Mr. Benton's motion on that point is

25 frivolous and was correctly denied in a brief order by the

1   Court, that there is no reason why Google should not begin

2   producing documents to the Government immediately.  And the

3   Government, of course, will adhere to procedures outlined in the

4   opposition to the motion to quash the warrant.

5          With respect to the request for the protective order,

6   I just wanted to make two brief points.  The first is that our

7   understanding is that the provision that is at issue here is a

8   standard provision that the U.S. Attorney's Office for the

9   Southern District of Iowa includes in all of its discovery

10  orders in all of its criminal cases, and that that provision

11  reflects a balance that has been struck in this jurisdiction

12  between, on the one hand, the Government's concern with

13  restricted access to the most sensitive materials that are

14  produced in discovery, and on the other hand the defendants'

15  need to prepare adequately for their defense.  And our

16  understanding is that it is the practice of all of the judges in

17  the district who routinely sign such orders in criminal cases.

18         And the second point I wanted to make about this was

19  just that Mr. Benton suggests--or I guess all the defendants

20  suggest in their oppositions to the motion, that the

21  Government's reason for seeking the motion is just a concern

22  with our reputation, that somehow we'll get blamed for any leaks

23  of the materials that may occur, and that we're concerned about

24  protecting our good name.  But that is not the Government's

25  concern here.

1          Our concern, rather, is that witnesses who testify

2    before the Grand Jury and who are interviewed by the FBI are

3    entitled to a sensitive handling of the materials that are

4    produced arising out of those interviews and Grand Jury

5    appearances.  And it is unfair to those witnesses to create a

6    substantial risk that those materials, materials related to

7    their interviews and testimony, will be leaked to the public in

8    advance of a trial.

9          Leaks also taint the jury pool and make it more

10   difficult for everyone to obtain a fair and impartial jury for

11   this criminal trial.  And I believe that the evidence that we

12   submitted under seal on Friday shows that in this particular

13   case, the concern about leaks of sensitive material is

14   justified, and that the threats to leak information that the

15   Government learned of during this investigation were not, as the

16   defendants would have it, kind of spur-of-the-moment, angry

17   responses in the heat of a political campaign, but were, rather,

18   deliberate and thought--a well-thought-through plan that showed

19   that the defendants in this case are willing to leak sensitive

20   materials when it will advance their interests to do it.  And

21   that's why this standard discovery provision is particularly

22   appropriate in this case.

23          THE COURT:  All right.  Thank you.

24          My suggestion would be either Mr. Howard or Mr. Cook,

25   one of you go next.

1    MR. COOK:  Your Honor, this is Guy Cook.  I'm happy to

2  go next--

3    THE COURT:  Why don't you.

4    MR. COOK:  --on behalf of Google.

5    We filed last week a resistance to the Government's

6  motion to compel production and the show cause on contempt both

7  in the miscellaneous civil action, where this Court's order

8  issued from on August 10th, and in the criminal action, where

9  the Government filed its motion to compel.  So we have that on

10 file in both actions.

11    It's important to note, of course, that already the

12 Government has acknowledged that Google has done nothing wrong

13 or improper here, and that they're not now seeking sanctions or

14 contempt actions against Google.  Google respects the Court's

15 ruling and order of August 10th on Defendant Benton's motion to

16 quash, but the time line here is important to understand the

17 context.

18    Following the ruling, Google was advised by Defendant

19 Benton's counsel that Defendant Benton intended to seek relief

20 from the order, which the Court's aware of and has been already

21 argued.  Google advised the Government that it plans to await

22 the outcome of such relief before producing the information.

23 You'll see that in the declaration of Attorney Randy Tyler

24 that's attached to our resistance which we filed last week.

25    On the 11th of August, the Government advised via

1  voice mail that absent a motion to stay by Defendant Benton, the

2  Government would file a motion to compel.  Of course we now know

3  that the next day, on August 12th, Defendant Benton filed a

4  motion to seek temporary relief, staying execution of this

5  Court's order of August 10th, so an appeal could be taken by

6  Defendant Benton.

7          Then on the next day, in spite of that motion for

8  relief, the Government then filed its motion to compel and to

9  show cause on why Google should not be held in contempt.

10         As has been identified already in this record, and the

11  Court's aware, Defendant Benton has 14 days under Rule 59 to

12  seek relief from the August 10th order, and that would be seven

13  days from today, or August 24th.

14         All that Google was saying here, Your Honor, in our

15  resistance and our attachments is it is reasonable to wait until

16  those seven days pass before producing information, and to do

17  otherwise would short circuit Defendant Benton's appeal.

18  Meritorious or not, it should be allowed to go forward.

19         And to appreciate, by way of context further, the

20  issue of the warrant and motion to quash was briefed by the

21  Government and Defendant Benton many months ago, and was pending

22  since September 14th.  The warrant is in July, the motion to

23  quash was in September.  There was no action for about eight

24  months, and then there was a hearing held on June 4th of this

25  year.

1          And so it would seem reasonable to Google that seven

2 days more would not prejudice any party to allow Defendant

3 Benton's appeal and to protect Google from any claims of short

4 circuiting the legal process.

5          Google has acted in good faith, honorably throughout

6 the circumstances here, and is not in defiance of the Court's

7 order.

8          Thank you, Your Honor.

9          THE COURT:  Mr. Cook, the only comment that I would

10 make is we're really talking about more than seven days.  In the

11 grand scheme of things it's not huge, but seven days would get

12 the appeal on file.  But then the Government would have an

13 opportunity to respond to that, and then we'll be waiting for

14 the ultimate ruling from the District Court Judge.

15          So is it Google's position that they should--we should

16 wait that full period of time?  In essence, they want a ruling

17 on the appeal?  Is that what I'm understanding?

18          MR. COOK:  Yes, Your Honor, that is Google's position,

19 that until there has been a final decision on this by the

20 District Court, that it would be--Google should not be in a

21 position to short circuit the legal rights that Defendant Benton

22 has.

23          THE COURT:  All right.  Thank you.  And, Mr. Cook, one

24 more question.  Do you have a sense, once everything is

25 resolved, or once Google is given the order from the Court,

1  whenever that might be, whether now or later to produce, do you

2  have a sense how long that would take?

3          MR. COOK:  I would defer to my co-counsel, John Roche,

4  who has a motion for pro hac vice pending.  He can answer that,

5  Your Honor.

6          THE COURT:  Okay.  Thank you.

7          MR. ROACH:  Good morning, Your Honor.  This is

8  Mr. Roche.  I think Google can act expeditiously once it's

9  determined this matter has come to a close.  We would have to

10 assess the procedural posture, whatever the further order is

11 that gets entered, but Google can produce relatively quickly

12 once the production is deemed appropriate.

13         THE COURT:  And, Mr. Roche, let me just ask you, and I

14 don't--I'm not trying to tie you down, but can you give me a

15 sense of are we talking a week?  Are we talking longer than

16 that?  What's your sense about that?

17         MR. ROACH:  I would not think--once a decision is made

18 that production is appropriate, it would not take more than a

19 week.

20         THE COURT:  Okay.  Thank you.  That's helpful.  All

21 right.

22         Mr. Howard, do you want to respond to either or both

23 of the motions from the Government?

24         MR. HOWARD:  Your Honor, I will certainly stand by

25 Google's representations.  We don't have anything to add to

1    that.

2           I'm happy to respond to the protective order.  I don't

3    know if Mr. Warrington or Mr. Binnall wanted to add, but I'd

4    certainly like to just start there, if that's okay with the

5    Court.

6           THE COURT:  That's okay.  Go ahead.

7           MR. HOWARD:  Your Honor, first of all, I want to point

8    out that we have spoken on at least two occasions--I've spoken

9    once, I know the group has spoken at least twice--with

10   Mr. Kravis and Mr. Pilger about this protective order, and I

11   will tell you that the overwhelming theme was that they're

12   worried they get blamed for leaks.  This is about their

13   reputation.  They can deny it now, but that's exactly what they

14   told us during our meetings with them.  They keep pointing to

15   Mr. Benton and the others, and what they're saying is their

16   willingness to leak things.

17          First of all, I mean, they--we were told--and I don't

18   have the exact wording--that they didn't trust our clients, and

19   I'm not going to tell them who they should trust, but Mr. Benton

20   does have a presumption of innocence.  We think that that should

21   be credited here.

22          And, you know, they have indicated that there are

23   e-mails that they're showing from the heat of a presidential

24   campaign in 2012, and they point that out as somebody's

25   willingness to leak information.  Your Honor, they're simply

1 apples and oranges.

2        You're talking about competent citizens of this

3 country, one, doing their jobs.  I mean, as everybody knows,

4 especially in Iowa, the presidential campaign is all about the

5 media, it's nothing else, versus whether Mr. Benton, Mr. Tate,

6 and Mr. Kesari can follow a court order, which is wholly

7 different.

8        We think that the things that are in place in the

9 Southern District of Iowa now are more than adequate.

10 Mr. Benton certainly can be ordered not to have contact with the

11 press.  He is actually under that direction now from counsel.

12 But for them to compare them doing their jobs--like it or not,

13 that's what the job is--versus their ability to follow your

14 orders, or anybody else's orders once a trial starts, are just

15 apples and oranges.  And to make that kind of comparison is

16 beyond unfair.

17        The other thing I'll point out is that for all of

18 their talk about the sensitivity of this material, what they do

19 is in their order.  And what I hear Mr. Kravis saying now is

20 that it was done in a secret place, that's the Grand Jury, or it

21 was done in a sensitive manner, and those are the law

22 enforcement memos.

23        What they don't say is what the material is.  And I

24 will just make a representation that the Grand Jury obviously

25 results in an indictment.  I have read through the indictment, I

1  have listened to the Department of Justice's press conferences,

2  and, quite frankly, there is simply nothing in any of the

3  material that is sensitive, not in the way that Rule 16

4  considers it.

5          They have not presented anything for review by this

6  Court, they have not made one representation either at this

7  hearing or at our--or in their filings to say one thing about

8  one piece or document that they consider overly sensitive.  And

9  I will--I would even go so far as to suggest that whatever they

10 talk about is already out in the public, it's out here.

11         And the final thing I'll say, Your Honor, this is

12 really about our Sixth Amendment--our client's Sixth Amendment

13 right to counsel.  I will point out that, as you know, we're in

14 Washington, D.C.  Mr. Benton is in Louisville, Kentucky.  He has

15 had to resign his job because of this matter.  So he does not

16 have a source of income as we're doing it right now.

17         The only way we can communicate with him is through,

18 obviously, e-mails, telephone, and for him to have copies of the

19 things that we need him to review.  And for the Government to

20 now--and, Your Honor, I'm just going to digress.  For them to

21 say that it's a particular matter that's usually in protective

22 orders is simply not a reason to keep it in.

23         In this case, Mr. Benton would be unbelievably

24 prejudiced if we weren't able to give him copies of things.  He

25 needs to, as the Constitution provides, he needs to be able to

1   see who his accusers are and what they say so we can come up

2   with our defense, and we understand what it is the Government is

3   trying to prove, and we can understand it.

4           For them to say that we can't give him copies of what

5   we are looking at so that we can have meaningful discussions

6   over hundreds of miles of distance, it's as unfair as I've seen.

7   It makes no sense.  And, Your Honor, there is nothing in any of

8   these materials, nothing in anything they've given us, nothing

9   that they have said, as a matter of fact they've said nothing,

10  that would indicate there is anything that would even approach

11  being sensitive.

12          In terms of how their witnesses should be treated,

13  that's not the issue, Your Honor.  The Constitution is all about

14  the defendant, and he's got a right to protect himself.  These

15  witnesses, when they go into the Grand Jury, presumably they are

16  told exactly how these things pan out.  Mr. Benton has no

17  intention of telling anybody about this.  It certainly doesn't

18  work to his favor, and he's got no intention of leaking or

19  talking to the press.  We'll make that representation.

20          And my suggestion is, instead of this onerous section,

21  that an order to that effect to each one of the defendants be

22  issued as opposed to keeping him from being able to take his

23  time, review the materials that the Government has alleged

24  are--make up a crime.

25          And, Your Honor, I mean, I don't know how we could do

1   it if you were to enter this order.  I mean, he can't afford to

2   fly us to Louisville on a regular basis, he's not going to come

3   here on a regular basis.  And, obviously, you know, the internet

4   and everything makes our jobs a lot easier.  But for him not to

5   have copies of things that we are reviewing would be a real

6   violation of his Sixth Amendment right.

7           THE COURT:  And, Mr. Howard, can you tell me, we're

8   talking about witness testimony?

9           MR. HOWARD:  Yes.

10          THE COURT:  What else falls within that category, that

11  you're aware of, that you believe is out there?

12          MR. HOWARD:  Well, I can ask Mr. Kravis.  I think it's

13  witness--its in their protective order.  Let me see if I can

14  find it real quick.

15          THE COURT:  Okay.

16          MR. HOWARD:  It's witness testimony and 302s, I think

17  are the categories.  I believe that Mr.--yeah.  I think he took

18  out--I think he took out exhibits, but they're law enforcement

19  reports and Grand Jury testimony--law enforcement reports,

20  investigative reports, witness statements, memoranda of witness

21  interviews, audio recordings, video recordings, and Grand Jury

22  testimony is what we understand is included.

23          THE COURT:  Mr. Kravis, do you agree that's what we're

24  talking about?

25          MR. KRAVIS:  Yes.  There's one additional--with one

1　addition.  There are some handwritten notes of the agents from

2　the witness interviews, and those would fall in the same

3　category.

4　　　　　And, of course, our understanding is that the standard

5　order in this jurisdiction includes Grand Jury exhibits.  And in

6　this case we agreed to remove the Grand Jury exhibits from the

7　order because many of the documents the Government intends to

8　introduce at trial were introduced in the Grand Jury as

9　exhibits, and we did not want the defense lawyers to be in a

10　position of having to check the Grand Jury record every time

11　they wanted to give their clients a copy of a key document in

12　the case.

13　　　　　THE COURT:  All right.  Thank you.

14　　　　　And thank you, Mr. Howard.

15　　　　　Mr. Warrington, anything additional you wanted to add?

16　　　　　MR. WARRINGTON:  Yes, I would like to, Your Honor.

17　The Government's position--I'd like to adopt Mr. Howard's

18　representation, but the Government's position seems to be

19　two-fold in that there's some boilerplate language in the order

20　that has been adopted and used frequently in this district that

21　should be acceptable for all purposes.  However, I would just

22　point out that boilerplate language ought not trump the

23　individual's Sixth Amendment right to counsel.

24　　　　　And the Government then argued that these are--the

25　witnesses are entitled to have their interviews handled--

1  because it's sensitive information, and it would be unfair to

2  those witnesses.

3        As Mr. Howard correctly pointed out, the issue is not

4  unfairness to witnesses.  It is the constitutional rights of the

5  defendants here in this matter.  So the fact that the witnesses'

6  information is shared with the defendants, as they prepare their

7  defense to these charges, should clearly be outweighed by the

8  constitutional rights of the defendants here.

9        And I will make one final point.  The Government has

10 represented that these supposed or anticipated leaks that they

11 claim are a danger if this order is not entered would taint the

12 jury pool, yet the very first act that the Government undertook

13 here in this case is to issue a press release once the

14 indictments were handed down that referenced material that was

15 discussed out of context, material that was discussed in the

16 Grand Jury.

17       So if they are worried about materials being sensitive

18 and being put in the press, their own press office has already

19 done that.  So it is really galling to see that they are now

20 standing and saying that because there's a perception that these

21 political operatives, the defendants, might leak something to

22 the press, when they've already done it, is really not the case

23 here.

24       And it also, as Mr. Howard said, mixes apples and

25 oranges because we're talking about the rough and tumble world

1 | of a political campaign versus the proceedings in a criminal

2 | matter before a federal judge.  I think our clients are

3 | sophisticated enough to understand that, they are ably

4 | represented by counsel, they will be properly instructed, and

5 | they will obey the orders of the Court.

6 | But to have an order entered that prohibits them from

7 | having materials given to them so that they may effectively

8 | participate in their defense is a clear violation of their

9 | constitutional rights, and we think--that's why we oppose it.

10 | THE COURT:  Mr. Warrington, do you have the same

11 | situation with Mr. Tate, from a geographic perspective, that

12 | Mr. Howard has regarding his client?

13 | MR. WARRINGTON:  It's not as dramatic as Mr. Howard

14 | and Mr. Benton, the distance between the two.  But Mr. Tate

15 | lives approximately 45 to 50 miles outside of Washington, D.C.,

16 | and is employed in an area that's about ten miles closer to DC.

17 | So he's 35 miles away, and he clearly would not be able to drop

18 | everything every time I needed to speak with him regarding a

19 | document and come to Alexandria, nor could I drop everything and

20 | drive out to Warrenton, Virginia, to do the same thing with him.

21 | The convenience of being able to send an e-mail

22 | containing material that we would like to discuss in the course

23 | of preparing our defense certainly makes it a lot easier.  If we

24 | are prohibited from doing that, it adds a real burden on

25 | Mr. Tate's ability to effectively render assistance in his own

1  defense.

2       THE COURT:  Two more questions for you,

3  Mr. Warrington.  The first one is do you agree with Mr. Howard's

4  position that a better avenue would be for the Court to enter an

5  order specifically telling each of the defendants that they're

6  not to have conversations with the media, et cetera?

7       MR. WARRINGTON:  Your Honor, yes, we would agree with

8  that.  In fact, as Mr. Benton noted, I think it's pretty clear

9  that each of the defendants have been counseled in that regard,

10  and we would have no objection to an order limiting the contact

11  with the press.

12       THE COURT:  All right.  And I have one more question

13  for you, and I will also give Mr. Kravis and Mr. Howard an

14  opportunity to respond to this.

15       My question is this:  If the parties--if counsel is

16  going to supply certain of these materials to their clients, and

17  if the Court were to allow that, is there a concern about

18  allowing that via e-mail, or are those e-mails going to be in

19  some way encrypted, or is there sufficient security around that

20  e-mail exchange?

21       MR. WARRINGTON:  Your Honor, as I understand it right

22  now, and I have to admit that I am not the technical guru from

23  my law firm, but if the Court would require a secure e-mail

24  exchange, I'm sure we have an ability to do that within our

25  electronic communications systems here at our firm.  I suspect

1   the other counsel have that ability as well.

2         My general practice, absent certain other facts in

3   other cases that I handle, would be to communicate via the

4   regular chains of e-mail between our firm and our clients

5   without any extra level of encryption. However, I think we do

6   have that capability, should that be required by the Court.

7         THE COURT: All right. Thank you, Mr. Warrington.

8         MR. WARRINGTON: Your Honor, if I may, I have one

9   little appendage to that. If there is--it's something

10   Mr. Howard brought up. The Government really hasn't pointed out

11   to any degree of specificity what sensitive material that they

12   don't want our clients to have copies of. If--I'm certain we

13   would be willing to work with counsel, work with the Government,

14   if there is something that rises to the level of gravely

15   sensitive information that would warrant such protection. I

16   just don't know of it in this case, and I do not think that the

17   blanket assertion that certain materials are just ipso facto

18   sensitive would warrant the limitation on our clients' ability

19   to participate in their defense.

20         THE COURT: Okay. Thank you.

21         Mr. Howard, I'm going to let you respond to that issue

22   as well, and then I will give Mr. Binnall an opportunity to

23   provide any additional comments he wants to make on behalf of

24   his client, Mr. Kesari, and then I will go back to Mr. Kravis.

25         So if you want to go ahead and respond, Mr. Howard.

1           MR. HOWARD:  Thank you, Your Honor.  First of all, we

2      don't have any indication in our law firm, Barnes & Thornburg,

3      that we've had any issue with anything being hacked, or anybody

4      trying to get in.

5           All that being said, we're happy to follow any court

6      order or take any precaution.  We can send things through

7      secured password-coded devices, or send Mr. Benton a CD with the

8      materials and that way it would get to him through--via FedEx or

9      a courier, he'd get it on a CD, and then he'd load it.  So there

10     wouldn't be any concern of somebody hacking, you know--stealing

11     a--any communication between our office and him.

12          We understand the concern.  We haven't had any of that

13     pop up.  We do have fairly sophisticated IT people here, and we

14     can easily come up with a way to transfer material, either

15     through, you know, a hard copy and a CD, or through a more

16     secure e-mail exchange with a file that's password coded, or

17     something to that effect.

18          THE COURT:  All right.  Thank you, Mr. Howard.

19          Mr. Binnall, anything additional that you wanted to

20     say on behalf of your client?  And also, if you could address

21     that issue for me as well?

22          MR. BINNALL:  Yes, Your Honor.  And very briefly, we

23     join I think the very good arguments made by Mr. Howard and

24     Mr. Warrington.

25          The only thing that I'll add in there, Your Honor, is

1  that it's going to be very prejudicial for my client, who

2  doesn't have counsel paid for just as staff--he has counsel paid

3  on a retainer, an hourly basis--to have to have the lawyers

4  watching over him as he goes through and looks over these

5  documents; that he should be able to do--to help prepare in his

6  defense on his own time, and not necessarily at times that are

7  available to counsel, and not necessarily paying his lawyers to

8  sit there with him to go through all the documents.  That's

9  something that would be very prejudicial, specifically to my

10 client.

11        Regarding the security aspect, Your Honor, it's my

12 understanding from the discovery that we received--right now it

13 didn't come to us in an encrypted form.  It came to us in a

14 password-protected form, and that we would be able to duplicate

15 that security in sending it to our client, whether we sent it in

16 documents that were password protected, which we have the

17 capability to do, or if we sent a hard copy by--well, I mean, a

18 CD directly to our client, and then separately sent them the

19 password to open that CD.

20        If the Court really believed it needed to be through

21 some sort of encrypted means, we could find the capability to do

22 that, and--although I believe that's a little bit more onerous

23 than the manner that we've been provided these documents, which

24 is just password protected.

25        So for those reasons we join in everything that my

1  colleagues have said, and that we ask that we are able to send

2  copies of these documents to Mr. Kesari.

3         THE COURT:  Also, can you tell me from a geographic

4  standpoint, do you have a similar situation to Mr. Howard, or

5  more like Mr. Warrington's situation with Mr. Tate?

6         MR. BINNALL:  It's very similar to Mr. Warrington's

7  situation with Mr. Tate.  It's not airplane flights in order for

8  my client to get here, but I certainly can't drop everything on

9  a whim and go up to Loudoun County, Virginia; and it's difficult

10 for him, who is, because of all of this, having a difficult time

11 making ends meet, to just come here on a whim as well.

12        So for those reasons it would be much easier for him

13 to be able to review these documents on his own time with the

14 understanding--a court order saying that he cannot disclose any

15 of this information to the press, and that he can't have any

16 contact from here on out with the press.

17        THE COURT:  All right.  Thank you.

18        Mr. Kravis, I indicated I'd come back around to you.

19 And if you could, in your final comments also respond to the

20 question I raised about the e-mail communication, and anything

21 else you wanted to add, I would appreciate it.

22        MR. KRAVIS:  Yes.  Thank you, Your Honor.  I just

23 wanted to make two brief points, and then I'll address the

24 e-mail communication.

25        The first is on the motion to compel.  I think I heard

1  counsel for Google say that Google would be prepared to produce

2  documents within a week to the Government.  The Government's

3  position--and I've talked to Google's counsel about this last

4  week before the hearing--is that Google should be gathering

5  these documents now so that they are able to produce them to the

6  Government the next business day after the Court orders their

7  production.  I know a week doesn't sound like a very long time,

8  but there are only seven of them between now and our first trial

9  date.

10        In addition, the processing time for Google does not

11  account for the fact that the Government will have to process

12  the documents once they're received.  We will have an obligation

13  to do a search for any potentially privileged material, and

14  we'll be obligated under the terms of the warrant to search for

15  responsive documents, and to produce only non-privileged

16  responsive documents in discovery to the other defendants.  And

17  so that will take some time, and we are preparing to do that as

18  quickly as we can, as quickly as our information technology

19  section will allow us, but it will take some time and every day

20  will count.

21        And at this point the warrant has been in Google's

22  possession for over a year, and we're not, again, arguing about

23  the propriety or impropriety of their conduct up to this point,

24  but at a minimum, Google should be able to gather these

25  documents.  These documents should already be gathered.  If

1  they're not, they should be gathered right now so we can get

2  them right away because there's really no reason to delay the

3  litigation a week for Google to gather them.

4  On the discovery motion, the only thing I wanted to

5  add here is the Government has attempted to narrowly tailor

6  their request in this case.  As I mentioned a moment ago, we

7  removed Grand Jury exhibits from the list of restricted

8  materials so that the defendants would be able to have copies of

9  the key documents in the case.  The materials that we're talking

10  about are the Grand Jury transcripts, the witness statements,

11  and the notes of the witness statements.  Everything else the

12  defendants would be allowed to have copies of.  And, of course,

13  the defendants would be allowed to review those materials with

14  their lawyers or the investigators.

15  And so I think that--just to respond to the point that

16  all defendants have made about the burden on their ability to

17  prepare for trial, the Government has attempted to tailor its

18  request as narrowly as possible to try to get down to the core,

19  sort of, sensitive materials in the discovery.

20  With respect to the point that the Court raised about

21  communications via e-mail, the Government agrees that if the

22  Court were to allow the defense to provide copies of Grand Jury

23  transcripts, reports of witness interviews, and notes of those

24  interviews to the defendants themselves, that they should be

25  required to do so in a way that preserves the security of those

1  documents.

2       I think the concern is not so much the servers of the

3  law firms themselves as the vulnerability of whatever accounts

4  the defendants themselves are using.  If they're using a gmail

5  account--no offense to Google counsel on the phone--or an AOL

6  account, or something like that, that defense lawyers be ordered

7  to take steps to make sure that the documents are secure, and

8  that--I think the best way to do that is probably deliver them

9  on a CD or thumb drive rather than communicate by e-mail, but

10  there are ways to secure e-mail.

11       Since the Court raised the point of the security of

12  e-mail, I just wanted to add one housekeeping matter with

13  respect to the motion to quash the warrant.  The parties

14  throughout the litigation have been putting the gmail address at

15  issue in the pleadings, which are now in the public record.  I

16  believe--except for Google.  I believe Google did not do that.

17       I have seen this done both ways.  I've seen cases

18  where the e-mail address itself is actually reported as a matter

19  of public record, and I've also seen cases where the e-mail

20  account is redacted.  The Government, obviously, has no position

21  on this.  I just wanted to raise with the Court that if

22  Mr. Benton would like the e-mail address at issue redacted from

23  the public record, we would be happy to file redacted versions

24  of our pleadings that can replace the ones that are currently on

25  the public docket.

1      THE COURT:  Okay.  Thank you.

2      Mr. Howard, what's your position on that?

3      MR. HOWARD:  Your Honor, having Mr. Benton's e-mail

4  address redacted would be preferable for us.  We thank the

5  Government for that, yes.

6      THE COURT:  All right.  So what we'll need to do,

7  then, is to the extent that anybody's put that into their

8  pleadings, you'll have to file a redacted version of that.  I

9  will let the clerk's office know that is something that will be

10 happening so they're watching for it.

11     MR. HOWARD:  Thank you, Your Honor.

12     MR. KRAVIS:  Thank you.

13     THE COURT:  Okay.  Thank you all very much for your

14 time this morning.  That's all the questions--specific questions

15 that I had, and I did want to allow you all an opportunity to

16 make a full record with respect to the issues.  I would imagine

17 that some or all of them may get revisited beyond my handling of

18 them.

19     I'm going to take them all under advisement at this

20 time, and we'll be working on a ruling with respect to all three

21 of the motions so that we can get those out.

22     I also will let--I don't know which of the district

23 judges will get the appeal.  I assume it will likely be Judge

24 Jarvey, since the criminal case has been sent to him.  So I

25 assume that what will happen is anything that comes out of that

1  miscellaneous case that was the original matter on the warrant

2  will go to Judge Jarvey as well.  And I'll double-check that

3  with the clerk's office, but I think that probably makes the

4  most sense.  All right?

5          MR. HOWARD:  Thank you, Your Honor.

6          MR. KRAVIS:  Thank you, Your Honor.

7          MR. COOK:  Thank you, Your Honor.

8          THE COURT:  Thank you all for your time.

9          MS. SINFELT:  Your Honor, we had one quick question.

10  This is Meena Sinfelt for Defendant Benton.

11          THE COURT:  Yes.

12          MS. SINFELT:  We've noticed that the miscellaneous

13  matter has been closed.  And so to the extent there are more

14  filings, obviously, on our appeal, should we be filing that

15  under the criminal matter?

16          THE COURT:  I think you can still file under the

17  miscellaneous matter, even though--it's kind of a back room

18  administrative closure for us so that it's clear that the two go

19  together.  But I understand, and I have someone from the clerk's

20  office here with me, and you should still be able to file your

21  appeal in that matter.

22          MS. SINFELT:  Okay.

23          THE COURT:  Okay.  If you have any problems with that,

24  you can contact the clerk's office here in the Southern

25  District, but my understanding is you should still be able to

```
 1   file those types of matters in that case.

 2            MS. SINFELT:  Okay.  Thank you, Your Honor.

 3            THE COURT:  You're welcome.

 4            MR. HOWARD:  Thank you, Your Honor.

 5            MR. WARRINGTON:  Thank you, Your Honor.

 6            MR. BINNALL:  Thanks, Judge.

 7            MR. COOK:  Thanks, Judge.

 8            THE COURT:  Bye-bye.

 9            MR. KRAVIS:  Thanks.

10            (Proceedings concluded at 11:30 a.m.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1                    C E R T I F I C A T E

2           I, the undersigned, a Certified Shorthand Reporter of

3    the State of Iowa, do hereby certify that I acted as the

4    official court reporter at the hearing in the above-entitled

5    matter at the time and place indicated;

6           That I took in shorthand all of the proceedings had at

7    the said time and place and that said shorthand notes were

8    reduced to typewriting under my direction and supervision, and

9    that the foregoing typewritten pages are a full and complete

10   transcript of the shorthand notes so taken.

11          Dated at Des Moines, Iowa, this 27th day of August,

12   2015.

13

14

15                    /s/ Theresa Kenkel
                       CERTIFIED SHORTHAND REPORTER
16

17

18

19

20

21

22

23

24

25