IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br><br>v. )<br><br>JESSE R. BENTON, *et al.,* )<br><br>Defendants. ) | Criminal No. 4:15-CR-103 |

**MEMORANDUM IN SUPPORT OF DEFENDANT JOHN F. TATE'S
MOTION TO DISMISS THE INDICTMENT**

Dated: September 4, 2015

David A. Warrington (admitted *pro hac vice*)
Laurin H. Mills (admitted *pro hac vice*)
Brian W. Stolarz (admitted *pro hac vice*)
Paris R. Sorrell (admitted *pro hac vice*)
LeClairRyan, A Professional Corporation
2318 Mill Road, Suite 1100
Alexandria, Virginia 22314
Telephone: (703) 647-5926
Facsimile: (703) 647-5966
Email: david.warrington@leclairryan.com

*Counsel for Defendant John F. Tate*

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ......................................................................... iii

INTRODUCTION ........................................................................................1

STATUTORY AND REGULATORY BACKGROUND ............................................2

    I.      The FEC and Its Role ........................................................................3

          A.      The FEC's "Guidance" on Descriptive Labels for Disbursements ..............4

          B.      The FEC Civil Enforcement Process ........................................5

ARGUMENT ............................................................................................6

    I.      The Indictment Fails to Allege a Crime ...............................................6

          A.      It Was Legal for Sorenson to Work for the RPPC and to be Paid. .............6

          B.      There Was No Obligation to Report Payments to Sorenson as a Sub-Vendor ........................................................................................6

          C.      If the FEC Could Not Find Reason for a Civil Enforcement Action in *Kirk*, Then There Can Be No Criminal Liability Here. ..............................7

          D.      Sorenson's Work for RPPC is Not Easily Categorized. .............................8

    II.     The Government's Theory Renders the Statute Unconstitutionally Vague ............9

    III.    Under No Theory of the Law Do The Factual Allegations Against Mr. Tate Constitute a Violation of the Law. .......................................................12

          A.      The Indictment Is Factually Insufficient to Stand Against Mr. Tate. ........13

          B.      The Indictment Lacks the Requisite Particularity. ....................................14

    IV.    The Indictment is Multiplicitous Because It Charges the Same Crime Three Different Ways. .....................................................................15

          A.      The Indictment Violates the Multiplicity Doctrine ....................................15

          B.      Unit of Prosecution Analysis .................................................................16

    C.     The Charges Against Mr. Tate All Stem From the Same Unit of
Prosecution..............................................................................................16

CONCLUSION.............................................................................................................19

# TABLE OF AUTHORITIES

**PAGE**

**CASES**

*Bell v. United States*,
    349 U.S. 81 (1955)............................................................................................16

*Blockburger v. United States*,
    284 U.S. 299 (1932)..........................................................................................16

*Brown v. United States*,
    143 F. 60 (8th Cir. 1906) ................................................................................12

*Chevron, U.S.A., Inc. v. NRDC*,
    467 U.S. 837 (1984)............................................................................................8

*Grayned v. City of Rockford*,
    408 U.S. 104 (1972)..........................................................................................10

*Hamling v. United States*,
    418 U.S. 87 (1974)............................................................................................13

*M. Kraus & Bros., Inc. v. United States*,
    327 U.S. 614 (1946)..........................................................................................11

*Majors v. Abell*,
    361 F.3d 349 (7th Cir. 2004) ........................................................................6, 9

*North Carolina Right to Life, Inc. v. Leake*,
    525 F.3d 274 (4th Cir. 2008) ............................................................................9

*Republican Nat'l Comm. v. Fed. Election Comm'n*,
    76 F.3d 400 (D.C. Cir. 1996) ............................................................................2

*United States v. Chipps*,
    410 F.3d 438 (8th Cir. 2005) ....................................................................15, 16

*United States v. Clarridge*,
    811 F. Supp. 697 (D.D.C. 1992) ..............................................................15, 16

*United States v. Critzer*,
    498 F.2d 1160 (4th Cir. 1974) ..................................................................10, 11

*United States v. Cruikshank,*
92 U.S. 542 (1875)........................................................................................13

*United States v. Harriss,*
347 U.S. 612 (1954)......................................................................................10

*United States v. Hernandez,*
___ F. Supp. 3d ___, No. CR14-4088-8-MWB, 2015 WL 926078 (N.D. Iowa
Mar. 4, 2015)................................................................................................12

*United States v. Huyck,*
No. 8:13CR107, 8:15CR44, 2015 WL 4727462 (D. Neb. Aug. 10, 2015) ......................16

*United States v. Lanier,*
520 U.S. 259 (1997)...............................................................................10, 11

*United States v. Polizzi,*
257 F.R.D. 33 (E.D.N.Y. 2009) ....................................................................15

*United States v. Polychron,*
841 F.2d 833 (8th Cir. 1988) ........................................................................13

*United States v. Rosen,*
365 F. Supp. 2d 1126 (C.D. Cal. 2005) .........................................................18

*United States v. Santos,*
553 U.S. 507 (2008)......................................................................................10

*United States v. Shipley,*
825 F. Supp. 2d 984 (S.D. Iowa 2011) ...........................................................9

*United States v. Steffen,*
687 F.3d 1104 (8th Cir. 2012) .................................................................12, 15

*United States v. UCO Oil Co.,*
546 F.2d 833 (9th Cir. 1976) ........................................................................18

*United States v. Ward,*
No. CRIM 00-681, 2001 WL 1160168 (E.D. Pa. 2001)...................................10

*Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,*
455 U.S. 489 (1982)......................................................................................11

# STATUTES, CODES AND OTHER AUTHORITIES

2 U.S.C. § 434(a)(1)............................................................................................6

2 U.S.C. § 434(b)(5)(A)......................................................................................6, 7

2 U.S.C. § 437(d)(1)(A)(i) ..................................................................................6

18 U.S.C. § 1001(a)(1) (2015) ............................................................................17

18 U.S.C. § 1519 (2015) .....................................................................................6, 17

52 U.S.C. § 30102(i) (2015) ...............................................................................2

52 U.S.C. § 30104 *et seq* (2015) .....................................................................2

52 U.S.C. § 30104(a)(1) (2015) ..........................................................................2

52 U.S.C. § 30104(b)(5)(A) (2015) ....................................................................2, 7, 10

52 U.S.C. § 30106 (2015) ...................................................................................3

52 U.S.C. § 30109(d)(1)(A) (2015) ....................................................................14

11 C.F.R. § 102.9(d) (2015).................................................................................2

11 C.F.R. § 104.3(b)(4)(i)(A) (2015)..................................................................3, 10

11 C.F.R. § 104.7(a) (2015) ................................................................................2

Reporting Ultimate Payees of Political Committee Disbursements, 78 Fed. Reg. 40625-03 (July 8, 2013) .............................................................................................................7

Statement of Policy: "Purpose of Disbursement" Entries for Filings with the Commission, 72 Fed. Reg. 887-01 (Jan. 9, 2007)...........................................................................4

*Examples of Adequate Purposes*, http://www.fec.gov/rad/pacs/documents/ExamplesofAdequatePurposes.pdf (last visited August 28, 2015)...........................................................................................4

FEC Advisory Opinion 1983-25 (Mondale for President) (1983), 1983 WL 909290....................6

Federal Election Commission Factual and Legal Analysis, MUR 6510 (Kirk for Senate) (July 16, 2013), *available at* http://eqs.fec.gov/eqsdocsMUR/13044341798.pdf ...........................7

*Responding to a Request for Additional Information (RFAI)*, Federal Election Commission, http://www.fec.gov/rad/FederalElectionCommission-RAD-RespondingtoRFAIs.shtml (last visited Sep. 2, 2015)........................................................................................................5

Vertolli Affidavit, MUR 6510 (Kirk for Senate) (Nov. 14, 2011), *available at* http://eqs.fec.gov/eqsdocsMUR/13044341670.pdf ................................................................7, 8

Craig C. Donsanto & Nancy L. Simmons, *Federal Prosecution of Election Offenses*, 135 n.50 (May 2007), *available at* http://www.justice.gov/sites/default/files/criminal/legacy/2013/09/30/electbook-0507.pdf) .......14

Donald F. McGahn, *FEC Enforcement: A Primer*, Campaigns & Elections (Mar. 30, 2015), http://www.campaignsandelections.com/magazine/2422/fec-enforcement-a-primer ....................3

Defendant, John F. Tate ("Mr. Tate"), submits this Memorandum in Support of his Motion to Dismiss the Indictment.

## <u>INTRODUCTION</u>

The Government has indicted Mr. Tate for something that is not a crime. This is not a case about who was paid; how much was paid; or even whether payments were legal or appropriate. Yet, the Indictment reads like a bribery case, which is misleading. It was legal to pay former Iowa state senator Kent Sorenson ("Sorenson") for his work in support of the 2012 Ron Paul Presidential Campaign ("RPPC") and it was legal for Mr. Sorenson to be paid for that work by another entity. Most importantly, the payments were properly reported to the Federal Election Commission ("FEC"), as will be demonstrated below. No crime occurred here based on thirty year old FEC precedent, recently re-affirmed in a 2013 matter based on much more egregious facts. If the FEC could not find even a civil violation of the law in that case, there can be no criminal liability here.

The Indictment recognizes that the RPPC's disbursement reports complied with the law because this case is based solely on the descriptive label the RPPC used to describe disbursements related to Sorenson. Nowhere in the Indictment is there any fact pled that, if proven, would show that Mr. Tate took any action to mischaracterize the disbursements at issue, caused anyone else to mischaracterize them, or that he was even aware of how the disbursements would be labeled in FEC reports.

This first-of-its-kind prosecution is legally flawed and insufficiently supported by alleged facts. The Government might not like what occurred here, and the Government might want to pursue a new and novel approach to criminal prosecution under the pertinent statutes, but such an approach is not consistent with the current state of the law as interpreted by the FEC. The

Election Crimes Branch of the Public Integrity Section of the Department of Justice enforces the law, but it has no power to make or interpret it.

The Government has not only charged conduct that is not a crime, but it also grossly over-charged the case by indicting Mr. Tate for the same crime three different ways. Such "multiplicitous" charging is not permitted because it could result in multiple punishments for the same crime, can confuse juries, and the tactic can cause unfair prejudice to defendants. If the Court does not dismiss the Indictment against Mr. Tate in its entirety, it must at least order the Government to elect which of the three multiplicitous charges it will pursue.

## STATUTORY AND REGULATORY BACKGROUND

The Federal Election Campaign Act ("FECA") imposes only minimal reporting requirements for campaign expenditures. *See* 52 U.S.C. § 30104 *et seq* (2015). The committee treasurer is obligated to "file reports of receipts and disbursements in accordance with the provisions of" the relevant subsection. *See* 52 U.S.C. § 30104(a)(1) (2015). The pertinent statutory subsection requires the committee treasurer to report to the FEC the (1) name, (2) address, (3) amount, and (4) purpose of any operating expenditure made to a person within the calendar year that exceeds $200 in the aggregate. 52 U.S.C. § 30104(b)(5)(A) (2015). Committee treasurers are held only to a "best efforts" standard when it comes to their reporting duties. 52 U.S.C. § 30102(i) (2015); 11 C.F.R. §§ 102.9(d) & 104.7(a) (2015); *see also Republican Nat'l Comm. v. Fed. Election Comm'n*, 76 F.3d 400, 405-06 (D.C. Cir. 1996) (summarizing the legislative history of FECA, which describes the "best efforts" provision as an "anti-nit-picking amendment").

## I.    The FEC and Its Role

The FEC is the federal agency tasked with enforcing federal election law.  *See* 52 U.S.C. § 30106 (2015).  Its enforcement process is the appropriate vehicle to address any issues related to the characterization of disbursements that form the basis of this Indictment.  If the FEC were to find what occurred here problematic, it could require the RPPC to amend its reports, and it could issue regulatory guidance to address confusion related to the sufficiency of descriptive labels to be used when describing the purpose of disbursements in FEC reports.[1]

The pertinent regulation regarding classification of disbursements requires a brief statement as to why a disbursement was made and then provides a non-exhaustive list of examples of descriptive labels that would or would not meet this requirement.

> Examples of statements or descriptions which meet the requirements of this paragraph include the following: dinner expenses, media, salary, polling, travel, party fees, phone banks, travel expenses, travel expense reimbursement, and catering costs. However, statements or descriptions such as advance, election day expenses, other expenses, expenses, expense reimbursement, miscellaneous, outside services, get-out-the-vote and voter registration would not meet the requirements of this paragraph for reporting the purpose of an expenditure.

11 C.F.R. § 104.3(b)(4)(i)(A) (2015).  As these are mere examples, it is left unstated whether other descriptive labels would be satisfactory.  It is easy to see the difficulty in choosing the correct label for a disbursement that encompassed multiple purposes.  To provide some clarity, the FEC has provided non-binding "guidance."

---

[1]     Donald F. McGahn, *FEC Enforcement: A Primer*, CAMPAIGNS & ELECTIONS (Mar. 30, 2015), http://www.campaignsandelections.com/magazine/2422/fec-enforcement-a-primer (Mr. McGahn is a former FEC Commissioner and Chairman).

## A. The FEC's "Guidance" on Descriptive Labels for Disbursements.

The FEC issued a "Statement of Policy" (the "Statement') regarding the "Purpose of Disbursement." Statement of Policy: "Purpose of Disbursement" Entries for Filings with the Commission, 72 Fed. Reg. 887-01, 887 (Jan. 9, 2007) (attached as Ex. A). The Statement provides that the descriptive label "must be sufficiently specific to make the purpose of the disbursement clear." Ex. A at 887. The FEC also provided a non-exhaustive list of examples that it considered acceptable and unacceptable. *Id.* While the Statement may contain helpful "guidance," it "does not bind the commission or any member of the general public." *Id.* at 889. It therefore lacks the force of law. What that means is that the question of whether a given classification is adequate is therefore always an *ad hoc* determination on which reasonable people may often differ.

The FEC's expense classification taxonomy guidance is set forth below:[2]

## EXAMPLES OF ADEQUATE PURPOSES

| | |
|---|---|
| 1. Accounting/accounting services | 43. Office equipment/office equipment rental |
| 2. Administrative levy | 44. Office supplies (if to a vendor) |
| 3. Advertising – radio/internet/TV/newspaper/print | 45. Rent |
| 4. Airfare | 46. Research/research services |
| 5. Bank fee/bank charge | 47. Salary |
| 6. Ballot fee/ballot access fee | 48. Sample ballots |
| 7. Cab fare/taxi fare | 49. Shipping/delivery service |
| 8. Canvassing | 50. Signs |
| 9. Car rental | 51. Slate card(s) |
| 10. Catering | 52. Slate card mailer |
| 11. Check fee | 53. Software/software licensing |
| 12. Computer (equipment/programming/support) | 54. Subscription |
| 13. Consultant – (specific) / (specific) consulting (see Adequate Consultant /Consulting Purposes) | 55. Survey/survey research |
| | 56. Sustaining membership – phone bank |
| 14. Compliance/reporting/filing services | 57. Technical/computer support |
| 15. Copying/copies | 58. Teleconferencing services |
| 16. Courier service | 59. Telephone/phone/cell phone/mobile phone service |
| 17. Credit card fee/merchant fee | 60. Taxes |
| 18. Database services | 61. Translation fee |
| 19. Direct mail services | 62. Transportation |
| 20. Direct marketing | 63. Travel |

[2] FEC *Examples of Adequate Purposes*, http://www.fec.gov/rad/pacs/documents/ExamplesofAdequatePurposes.pdf (last visited August 28, 2015).

| | |
|---|---|
| 21. Door hangers | 64. PAC newsletter |
| 22. Door-to-door Get-Out-the-Vote (GOTV) | 65. PAC postage |
| 23. Exit polling | 66. Palm cards |
| 24. Facility/room rental | 67. Parking |
| 25. Candidate filing fee | 68. Payroll |
| 26. Food and/or beverage(s) | 69. Payroll processing fees |
| 27. Fundraiser – food/beverages/rental/entertainment | 70. Per diem/petty cash/stipend |
| 28. Fundraising (if to a vendor) | 71. Petitioning |
| 29. Fundraising supplies | 72. Photography services |
| 30. Garnishment | 73. Phone banks (if to a vendor) |
| 31. GOTV phone calls | 74. Phone bill |
| 32. Hand bills/cards | 75. Pins |
| 33. Interest charges | 76. Polling |
| 34. Internet service | 77. Postage |
| 35. Legal/legal fees/legal services | 78. Posters |
| 36. Letterhead/envelopes/stationary | 79. Printing |
| 37. List acquisition | 80. Processing fee(s) |
| 38. Lodging/hotel | 81. Utilities (if to a vendor) |
| 39. Logo design | 82. Wages |
| 40. Meal(s) | 83. Web hosting |
| 41. Media | 84. Website services |
| 42. Mileage/mileage reimbursement | |

## B.  The FEC Civil Enforcement Process

When the FEC has a question regarding the reporting of contributions or disbursements, it has a process in place to seek clarification and, if necessary, correction.  This process is directed by the FEC's Reports and Analysis Division ("RAD") analysts who review reports filed by committees and make determinations on whether or not to send a Request for Additional Information ("RFAI") to the filer.  *Responding to a Request for Additional Information (RFAI)*, FEDERAL ELECTION COMMISSION, http://www.fec.gov/rad/FederalElectionCommission-RAD-RespondingtoRFAIs.shtml (last visited Sep. 2, 2015).  One of the review categories subject to this process is whether a committee properly itemized contributions and disbursements.  *Id.* If discrepancies are found, committees are afforded the opportunity to amend their reports.  *Id.* The RFAI is the standard procedure that the FEC follows when it has questions regarding campaign reporting matters.

Had this process been invoked here, and the FEC's RAD analysts found the descriptive label at issue lacking, the RPPC likely would have simply amended its report in conformance

with what the RAD analysts deemed more appropriate. Instead, we have a criminal indictment. This motion challenges the legal premise of this Indictment.

## ARGUMENT

### I. The Indictment Fails to Allege a Crime.

This Indictment is the nit-picking that Congress sought to avoid concerning the label used to describe the purpose of a disbursement. What happened here is not a crime and, even if it were, the facts alleged in the Indictment are insufficient to implicate Mr. Tate.

#### A. It Was Legal for Sorenson to Work for the RPPC and to be Paid.

There is no authority for the proposition that it was illegal for Sorenson to be paid by the RPPC, regardless of whether that payment was for his endorsement or, as was the case, for the work he did for the campaign. Notwithstanding the Government's attempt to turn this into a bribery case, there was nothing criminal about Sorenson working for the RPPC. That is why such a charge is conspicuously absent from the Indictment.[3]

#### B. There Was No Obligation to Report Payments to Sorenson as a Sub-Vendor.

The Indictment alleges that Sorenson's company, Grassroots Strategy, was paid as a sub-vendor to a film production company called Interactive Communications Technology ("ICT"). Ind. ¶¶ 16(p) - (s). There is no obligation for a committee treasurer to report payments made by campaign vendors to sub-vendors, otherwise known as the "ultimate payees." FEC Advisory Opinion 1983-25 (Mondale for President) (1983), 1983 WL 909270, at *2 (attached as Ex. B) ("The [FEC] concludes that the Committee may report its payments to Consultants as

---

[3]     That Sorenson violated an Iowa State Senate Ethics rule about accepting payments from political campaigns is of no moment. Neither is the fact that Sorenson pled guilty to a violation under 2 U.S.C. §§ 434(a)(1), 434(b)(5)(A), 437(d)(1)(A)(i) and 18 U.S.C. § 1519 (2015) determinative of whether a crime exists here. Campaign finance law is complicated and not well-understood, even by professionals who work in politics. It is entirely possible that Sorenson, and his counsel, did not fully comprehend what the law actually required and to what he was pleading with regard to federal election law. *See Majors v. Abell*, 361 F.3d 349, 355 (7th Cir. 2004).

expenditures. Consultants payments to other persons, which are made to purchase services or products used in performance of Consultants' contract . . . do not have to be separately reported"); *see also* FEC, MUR 6510 (July 16, 2013) (*Kirk for Senate, et al.*) (advising that a "committee need not separately report its consultant's payments to other persons" who are ultimate payees) (attached as Ex. C). When the FEC last opined on the reporting obligations to "ultimate payees," it chose not to issue any further clarification other than that which dealt with reimbursements for out-of-pocket and credit card expenses. *See* Reporting Ultimate Payees of Political Committee Disbursements, 78 Fed. Reg. 40625-03, 40626 (July 8, 2013) (attached as Ex. D). The FEC did note, however, that since the 1983-1984 election cycle, it was FEC policy to send an RFAI to committees when the FEC had questions about reimbursements to campaign staff above the $200 threshold. Ex. D at n.2.

The name, address and amount of disbursements to ICT were accurately reported. Thus, the Government bases its Indictment, as it must, exclusively upon on how the campaign classified the purpose of those disbursements.

C. **If the FEC Could Not Find Reason for a Civil Enforcement Action in *Kirk*, Then There Can Be No Criminal Liability Here.**

In November, 2011, the ex-wife of Senator Mark Kirk filed an FEC complaint against him, his campaign committee, and others alleging, *inter alia*, violations of 2 U.S.C. § 434(b)(5)(A) (now 52 U.S.C. § 30104(b)(5)(A) (2015)), which is the statute at issue here. *See* Vertolli Affidavit, MUR 6510 (the "Complaint") (attached as Ex. E).

The Complaint alleged that the Senator's girlfriend conspired with others, including the Senator, the campaign treasurer, and campaign vendors, to conceal payments of up to $200,000 to the Senator's girlfriend from appearing on FEC reports. Ex. E at ¶¶ 4, 8, 14, 21, 22, 23, 25-27. One of the allegations was that the label ("Advertising") used to describe the purpose of over

$1.8 million in disbursements, a significant portion of which went to the Senator's girlfriend, was false and should have been reported as "personal use, by a 'Family Member'."  Ex. E at ¶ 22.

The FEC found that Senator Kirk's campaign committee, and the other respondents, had properly reported its disbursements.  The FEC completely rejected the argument that the payments to the girlfriend were mislabeled.  *See* Ex. C at 11-13.  The FEC restated that there is no obligation to report payments to sub-vendors; nor can there be a corresponding duty to report the purpose of non-reported payments to sub-vendors.  *Id*.  Relying on the *Mondale for President* Advisory Opinion issued in 1983, the FEC advised "that a committee need not separately report its consultant's payments to other persons" who may receive payments as ultimate payees.  Ex. C at 12.  If the agency responsible for enforcing federal election laws would not initiate a civil enforcement action in *Kirk* on facts analogous to those here, there certainly can be no *criminal* liability based on the facts alleged.

The agency responsible for both interpreting and enforcing federal election law has twice expressly rejected the theory of criminal liability espoused by the Government in this Indictment. The FEC's determination is entitled to deference under *Chevron, U.S.A., Inc. v. NRDC*, 467 U.S. 837, 842-43 (1984).  The Government's ultra-aggressive and novel theory of this case entitled to no deference.

### D.    Sorenson's Work for RPPC is Not Easily Categorized.

To the extent that anyone at the RPPC knew that the payments to ICT were related to Sorenson, or even bothered to ask, parsing out the appropriate descriptive label for Sorenson's activities is, at best, a difficult task based on current FEC guidance.[4]

---

[4]    Mr. Tate certainly knew nothing about this relationship until, as alleged in the Indictment, June 25, 2012. Ind. ¶ 16(rr) ("What is this? What is it for, who is it? Why do we keep paying them?")

The Indictment does not allege what services Sorenson provided to RPPC other than appearing at a campaign event with Dr. Paul and endorsing him. Ind. ¶ 16(g). The evidence will show, however, that he made media appearances for the campaign, recorded "robocalls" to voters, lent his name to email blasts, voter contact mail and email, spoke with voters and potential delegates to the Iowa caucuses and Iowa state Republican Convention, traveled to South Carolina to assist in that primary, and that he frequently acted as a surrogate for Dr. Paul in Iowa when Dr. Paul was campaigning elsewhere. It is not clear how such diverse services should be classified, and none fits neatly in the FEC's taxonomy.

## II.     The Government's Theory Renders the Statute Unconstitutionally Vague.

Subjecting someone to criminal liability for not complying with such an admittedly vague expense classification regulatory scheme is also constitutionally problematic under both the Fifth and Fourteenth Amendments. "Campaign finance regulation has been termed 'baffling and conflicted.'" *North Carolina Right to Life, Inc. v. Leake*, 525 F.3d 274, 296 (4th Cir. 2008) (quoting *Majors v. Abell*, 361 F.3d 349, 355 (7th Cir. 2004)). "It is an area in which speakers are now increasingly forced to navigate a maze of rules, sub-rules, and cross-references in order to do nothing more than project a basic political message. Only those able to hire the best team of lawyers may one day be able to secure the advisory opinions or otherwise figure out the myriad relevant rulings with any degree of assurance that they will escape civil and criminal sanctions . . ." *Id.* (internal citation omitted).

"[D]ue process prohibits criminal liability for acts that one would not reasonably understand are prohibited." *United States v. Shipley*, 825 F. Supp. 2d 984, 987 (S.D. Iowa 2011). The Supreme Court has stated that:

> [t]he constitutional requirement of definiteness is violated by a criminal statute that fails to give a person of ordinary intelligence fair notice that

> his contemplated conduct is forbidden by the statute. The underlying
> principle is that no man shall be held criminally responsible for conduct
> which he could not reasonably understand to be proscribed.

*United States v. Harriss*, 347 U.S. 612, 617 (1954). The Supreme Court has also held that

"[u]nder a long line of our decisions, ***the tie must go to the defendant***." *United States v. Santos*,

553 U.S. 507, 514 (2008) (emphasis added).[5]

Here, even to get close to determining what an appropriate category would have been for

Sorenson's activities would have required substantial legal research performed by someone

familiar with the nuances of federal election law. Even then, as demonstrated above, the answer

would be open to reasonable interpretation. *See, e.g., United States v. Critzer*, 498 F.2d 1160,

1162 (4th Cir. 1974) (stating that "[e]ven if [the defendant] had consulted the law and sought to

guide herself accordingly, she could have had no certainty as to what the law required."); *United*

*States v. Ward*, No. CRIM. 00-681, 2001 WL 1160168, at *5 (E.D. Pa. 2001) (stating that "[a]

defendant should not be penalized for violating a regulation the interpretation of which cannot be

agreed upon by those who are responsible for its administration and enforcement.").

Even the Government does not suggest the appropriate category for these disbursements,

except as to intimate that they should have been reported as disbursements to Sorenson, rather

than as audio/visual expenses. Yet, the Government's personal identification position is

inconsistent with the law and FEC guidance because reporting the purpose of the disbursement

as "disbursement to Sorenson" goes to identifying the <u>who</u> contemplated by the statute, not the

<u>purpose</u> of the disbursement. *See* 52 U.S.C. § 30104(b)(5)(A) (2015);11 C.F.R.

§ 104.3(b)(4)(i)(A) (2015). Therefore, even the Government has problems identifying the

---

[5]     A "junior version of the vagueness doctrine" is the rule of lenity, which requires that any ambiguity in a statute be resolved in favor of the defendant. *See United States v. Lanier*, 520 U.S. 259, 266 (1997). "This venerable rule not only vindicates the fundamental principle that no citizen should be held accountable for a violation of a statute whose commands are uncertain, or subjected to punishment that is not clearly prescribed." *Santos*, 553 U.S. at 514.

correct label, demonstrating the vagueness and lack of fair notice to the defendants here. *See Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972) (holding that "[a] vague law impermissibly delegates basic public policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory applications."). "[A] criminal conviction ought not to rest upon an interpretation reached by the use of policy judgments rather than by the inexorable command of relevant language." *M. Kraus & Bros., Inc. v. United States*, 327 U.S. 614, 626 (1946).

Therefore, due to these issues, civil enforcement, rather than criminal prosecution, is the preferred course. *See, e.g., Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498-99 (1982) (holding that there should be "greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe"). Furthermore, the Supreme Court has held that "although clarity at the requisite [civil] level may be supplied by judicial gloss on an otherwise uncertain statute, due process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope." *Lanier*, 520 U.S. at 266. In other words, where a regulation is so nuanced and complex, as is often the case in the increasingly-complicated area of campaign finance regulations, civil enforcement should be preferred because the effects of a potentially imprecise regulation are significantly less harsh.

Allowing this prosecution to go forward based on a theory of what the law *should* require, as determined by the Election Crimes Branch of the Department of Justice, rather than *what* the law requires as promulgated by Congress or, at the very least, the federal agency tasked with enforcing federal election law, is unjust. *See Critzer*, 498 F.2d at 1164 (stating that the

appropriate forum for the government's "pioneering interpretation" of liability is in civil

enforcement rather than a criminal prosecution with the "attendant potential loss of freedom.").

### III.  Under No Theory of the Law Do The Factual Allegations Against Mr. Tate Constitute a Violation of the Law.

Even if he was charged with conduct that was actually criminal, the Indictment against

Mr. Tate must be dismissed because it does not allege facts indicating that Mr. Tate committed

*any* illegal acts; it does not allege that he committed any overt acts in furtherance of an illegal

conspiracy; and it does not allege facts demonstrating that there was ever even an agreement

among the alleged co-conspirators to defraud the Government by misclassifying payments made

to ICT.  Furthermore, there is no serious argument that the conspiracy to defraud the federal

government, which is the essence of the charges here, is pleaded with the particularity required

in the Eighth Circuit.

"[W]here an indictment alleges a scheme to defraud . . . it must specify facts 'not merely

in the general words of the statute, but with such reasonable particularity . . . as will . . . apprise

[the defendant], with reasonable certainty, of the nature of the accusation . . . and as will enable

the court to say that the facts stated are sufficient in law to support a conviction.'" *compare*

*United States v. Steffen*, 687 F.3d 1104, 1113 (8th Cir. 2012) (quoting *Brown v. United States*,

143 F. 60, 62 (8th Cir. 1906)) (dismissing bank fraud charge because indictment failed to allege

sufficient facts to show the defendant had a duty to disclose information or that constituted an

affirmative misrepresentation, and mere silence was not enough); *with United States v.*

*Hernandez*, ___ F. Supp. 3d ___, No. CR14-4088-8-MWB, 2015 WL 926078, at *5 (N.D. Iowa

Mar. 4, 2015) (indictment sufficiently pled where numerous specific acts relevant to the crimes

charged were sufficient to sustain charges of conspiracy to obstruct justice).  The *Steffen* and

*Hernandez* cases are the bookends to the pleading standard required here.

The Indictment alleges no facts that Mr. Tate entered into an explicit, or tacit, agreement to defraud the United States by mischaracterizing the purpose of expenditures associated with Sorenson. Conclusory allegations of fraud or deception, unconnected to alleged facts, or simply pleading the statutory language, are not sufficient. *United States v. Cruikshank*, 92 U.S. 542, 558 (1875) ("It is an elementary principle of criminal pleading, that where the definition of an offence, whether it be at common law or by statute, 'includes generic terms, it is not sufficient that the indictment shall charge the offence in the same generic terms as in the definition; but it must state the species, – it must descend to particulars'"). "Where guilt depends so crucially upon . . . a specific identification of fact, our cases have uniformly held that an indictment must do more than simply repeat the language of the criminal statute." *Hamling v. United States*, 418 U.S. 87, 118 (1974).

## A. The Indictment Is Factually Insufficient to Stand Against Mr. Tate.

The Court should read the allegations contained in ¶ 16(o) through ¶ 16(ggg) of the Indictment very carefully with regard to Mr. Tate because they mainly contain conclusions or recitations of statutory language rather than factual allegations. "[A]n indictment must allege that the defendant performed acts which, if proven, constitute the violation of law for which he is charged. If the acts alleged in the indictment do not constitute a violation of law, the indictment is properly dismissed." *United States v. Polychron*, 841 F.2d 833, 834 (8th Cir. 1988).

There was nothing about the fact that Sorenson was being paid through a firm called ICT that indicates that Mr. Tate was part of a scheme to obfuscate or misclassify payments to Sorenson. It was not illegal for Sorenson to receive payments as a sub-vendor and not Mr. Tate's obligation, as campaign manager, under any statute or regulation, to investigate the nature of the relationship between Sorenson and ICT. Nor was he personally obligated, under any law,

to make any reports regarding such information to the FEC.[6]  The Indictment does not allege that

Mr. Tate had any role in preparing or reviewing the FEC reports or that he even knew what was

in them.  Therefore, the Indictment fails to allege a knowing and willful violation of the law as is

required.  *See* 52 U.S.C. § 30109(d)(1)(A) (2015).

At most the Indictment alleges that Mr. Tate agreed to delay and then cancelled an

alleged promised disbursement to Sorenson.  Ind. ¶¶ 16(h)-(m).  These acts do not constitute a

crime.  The Indictment makes a bare allegation that Mr. Tate, along with the other defendants,

"made specific arrangements" for Sorenson to be paid.   Ind. ¶ 16(o).  Even if that allegation

were true, it was not illegal to pay Sorenson.  Paragraphs 16(p) through (s) describe acts taken by

Sorenson and Kesari, not Tate.  The Indictment then takes a leap without any factual support to

allege that Tate, along with the other defendants, caused the expense categorization to be

reported as "Audio/Visual Expenses" rather than payments to Sorenson.  Ind. ¶¶ 16(t)-(u).  This

rote pattern is repeated throughout paragraph 16 of the Indictment, and is insufficient. [7]

### B.    The Indictment Lacks the Requisite Particularity.

There is not a single fact pled to show that Mr. Tate knew how ICT would classify its

services when it submitted its invoices or how the campaign would classify payments to ICT for

FEC reporting purposes.  Nor is there any fact pled that shows he took any act related to that

classification.  The Indictment intimates that unwitting campaign personnel in charge of filing

---

[6]      One could argue that he was negligent in not inquiring further, but that question would pertain to Mr.
Tate's management style, not a criminal violation.  Mere negligence is not sufficient to establish criminal liability.
"Violations of these laws that are committed with lesser intent – including all violations committed negligently or
because the offender did not understand the application of the law to his or her conduct – are not federal crimes.
They are subject to civil and administrative enforcement by the [FEC]."  Craig C. Donsanto & Nancy L. Simmons,
*Federal Prosecution of Election Offenses*, at 135 n.50 (May 2007) (Mr. Donsanto was the Director of the Election
Crimes Branch of the DOJ's Public Integrity Section when he authored this) (available at
http://www.justice.gov/sites/default/files/criminal/legacy/2013/09/30/electbook-0507.pdf).

[7]      There is nothing in the Indictment that supports the Government's assumption that the $25,000 wire was
related to Sorenson and that point is not conceded here.

FEC reports were hoodwinked by a scheme concocted by Mr. Tate and the other defendants, but the Indictment offers nothing other than conclusory language, not facts, to support its charges. In the Eighth Circuit, federal criminal fraud must be pled with particularity, and this Indictment fails to meet that standard. *See Steffen*, 687 F.3d at 1113.

### IV. The Indictment Is Multiplicitous Because It Charges the Same Crime Three Different Ways.

Counts 2, 3, and 4 each allege the same thing – that Mr. Tate caused the RPPC to file a false report with the FEC regarding payments related to Sorenson. The Government is not permitted to charge a defendant with multiple crimes for the same act. Therefore, the Government must be ordered to elect which of those counts it will proceed with in this case.

### A. The Indictment Violates the Multiplicity Doctrine.

An indictment is multiplicitous if it charges the same crime in two or more counts. *United States v. Chipps*, 410 F.3d 438, 447 (8th Cir. 2005). The "main difficulty with such an indictment is that the jury can convict the defendant on both counts, subjecting the defendant to two punishments for the same crime in violation of the double-jeopardy clause of the fifth amendment." *Id.* Another danger of a multiplicitous indictment is that "it may falsely suggest to a jury that a defendant has committed not one but several crimes." *United States v. Clarridge*, 811 F. Supp. 697, 702 (D.D.C. 1992) (internal quotation marks and citation omitted); *United States v. Polizzi*, 257 F.R.D. 33, 36 (E.D.N.Y. 2009) (holding that "[i]t is now apparent that the case was unduly expanded by extreme overindictment," and such an overindictment creates an "exaggerated impression of a defendant's criminal activity"). Once such a message is conveyed to the jury, the "risk increases that the jury will be diverted from a careful analysis of the conduct at issue," leading to the possibility of compromise verdicts. *Clarridge*, 811 F. Supp. at 702.

Such compromise verdicts are particularly dangerous because a jury will assume that with multiple charges pending, the "defendant must be guilty on at least some of them." *Id.*[8]

## B.      Unit of Prosecution Analysis.

Multiplicty requires an analysis of the "unit of prosecution" of the subject statutes. *Bell v. United States*, 349 U.S. 81, 83-84 (1955); *see also Blockburger v. United States*, 284 U.S. 299 (1932) ("The test is whether the individual acts are prohibited, or the course of action which they constitute. If the former, then each act is punishable separately . . . If the latter, there can be but one penalty.") (internal quotation marks and citation omitted). When Congress fails to establish the unit of prosecution "clearly and without ambiguity," doubt as to Congressional intent is resolved by applying the rule of lenity. *Bell*, 349 U.S. at 83-84; *see also Chipps*, 410 F.3d at 449. In interpreting the unit of prosecution, the Eighth Circuit has also applied the "impulse test," which "treat[s] as one offense all violations that arise from that singleness of thought, purpose or action, which may be deemed a single 'impulse.'" *Chipps*, 410 F.3d at 449 (internal quotation marks and citation omitted).

## C.      The Charges Against Mr. Tate All Stem From the Same Unit of Prosecution.

The Government has charged Mr. Tate with the same crime three times. In Count 2, causing false records, Mr. Tate and his co-defendants are charged with the following act from February 2012 to August 2012: "causing Political Committee 2 to falsely record payments to Film Production Company W as audio/visual expenses that were in fact disbursements to Iowa State Senator Kent Leroy Sorenson." Ind. ¶ 18. In Count 3, causing false campaign contribution

---

[8]      Multiplicitous charging also creates the risk of an inconsistent jury verdict and jury confusion in cases where the jury reaches some kind of compromise verdict by convicting a defendant on one count and acquitting on another. When the two offenses have the same elements, a defendant convicted of one and acquitted on another has an excellent argument that the jury was confused or irrational. *See United States v. Huyck*, No. 8:13CR107, 8:15CR44, 2015 WL 4727462, at *9-10 (D. Neb. Aug. 10, 2015) (inconsistent verdict forced court to grant post-trial Rule 29 motion that the conviction was based on insufficient evidence that defendant knowingly received child pornography).

reports, Mr. Tate is charged with the following act from February 2012 to August 2012: "causing Political Committee 2 to report to the FEC disbursements to Film Production Company W  as audio/visual expenses that were in fact disbursements to Iowa State Senator Kent Leroy Sorenson."  Ind. ¶ 20.  And, in Count 4, false statements scheme, Mr. Tate and his co-defendants are charged with the following acts from February 2012 to August 2012:  "to cause Political Committee 2 to report to the FEC disbursements to Film Production Company W as audio/visual expenses that were in fact disbursements to Iowa State Senator Kent Leroy Sorenson."  Ind. ¶ 22.

The unit of prosecution is clear and unmistakable from the review of these counts— causing false records in connection with FEC filings.  All three counts have the same time frame of the alleged offense, February 2012 to August 2012, and there are no unique dates or times reflected in the counts that identify separate conduct.  The allegedly false records were allegedly made with one goal in mind—causing a false FEC report regarding Sorenson.  Therefore, the "impulse" and design of the alleged scheme was that allegedly false report.

The law is clear that Mr. Tate cannot be charged for the same act three different ways.  In fact, Count 2 only becomes a crime when the allegedly false record is used in connection with the FEC reporting.  *See* 18 U.S.C. § 1519 (2015) (subject false entry made "with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States.").  Similarly, Count 4 only becomes a crime when the allegedly false record is made in any matter within "the jurisdiction of the executive, legislative, or judicial branch of the Government."  *See* 18 U.S.C. § 1001(a)(1) (2015).  Therefore, all three crimes depend on a central fact—that the alleged falsity involved FEC reporting requirements.  There is no crime without such a reporting requirement.

A similar case involving allegedly false FEC reports is instructive. In *United States v. Rosen*, 365 F. Supp. 2d 1126 (C.D. Cal. 2005), a political fundraiser who was the National Finance Director for a senatorial campaign understated the contributions of a wealthy donor, thus causing false FEC reports to be made. Rosen was charged with four counts, three for specific reports or letters sent to the FEC, and one for the creation of a false invoice that was the basis for the first count of causing false reports to the FEC. *Id.* at 1130. The district court held that the fourth count was "inherently subsumed" by the first count because the indictment made it clear that the falsity charged in the first count resulted, at least in part, from the false invoice. *Id.* at 1138.

Furthermore, the "Defendant's alleged conduct in causing the invoice to be made had no additional or different impact on the FEC than did the report charged in Count One that was based, in part, on that invoice." *Id.* Therefore, the fourth count was dismissed as multiplicitous. *Id.*; *see also United States v. UCO Oil Co.*, 546 F.2d 833, 838 (9th Cir. 1976) (holding that "[w]e are satisfied that had the government used any particular false report as the basis for two counts, one charging a false statement and the other a concealment by trick, scheme or device, the indictment would be vulnerable to attack for multiplicity.").

Here, the Government has similarly alleged three counts that focus on the same alleged falsehood—that the expenditures reported as audio/visual expenses were disbursements for services provided by Sorenson. The same alleged falsehood that is at the core of count 2 is at the core of count 3 and count 4. Therefore, as in *Rosen*, the conduct of two counts (whichever the Government does not elect) is subsumed into the count that the Government will proceed upon. The counts that the Government does not elect should be immediately dismissed.

## <u>CONCLUSION</u>

The Government is proceeding against Mr. Tate on a novel theory that is inconsistent with the FEC's interpretation of the FECA. Congress did not endow the Election Crimes Branch, or any other branch within the Department of Justice, with the authority to promulgate new criminal laws or to interpret existing laws in a way to satisfy the DOJ's institutional agenda. For the foregoing reasons, the Court should dismiss the indictment against him swiftly and with prejudice.

Dated: September 4, 2015           Respectfully submitted,

/s/ David A. Warrington
David A. Warrington (admitted *pro hac vice*)
Laurin H. Mills (admitted *pro hac vice*)
Brian W. Stolarz (admitted *pro hac vice*)
Paris R. Sorrell (admitted *pro hac vice*)
LeClairRyan, A Professional Corporation
2318 Mill Road, Suite 1100
Alexandria, Virginia 22314
Telephone: (703) 647-5926
Facsimile: (703) 647-5966
Email: david.warrington@leclairryan.com

*Counsel for Defendant John F. Tate*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 4, 2015, I electronically filed a true and correct copy of the foregoing with the Clerk of Court using the CM/ECF system which sent notification of such filing to all counsel registered for ECF in this case.

/s/ David A. Warrington
David A. Warrington (admitted *pro hac vice*)
LeClairRyan, A Professional Corporation
2318 Mill Road, Suite 1100
Alexandria, Virginia 22314
Telephone: (703) 647-5926
Facsimile: (703) 647-5966
Email: david.warrington@leclairryan.com

*Counsel for Defendant John F. Tate*