(b) Applicants must certify and provide adequate proof that the expenses incurred to eligible fruit trees, bushes, or vines occurred during the applicable disaster period and that the loss or damage was a direct result of a 2005 hurricane, as set forth in § 760.101.

(c) The quantity and kind of fruit trees, bushes, or vines that died or were damaged as a result of the applicable disaster may be documented by; purchase records; bank or other loan documents; Federal Emergency Management Agency and National Guard records; IRS records; property tax records; private insurance documents; and similar documents.

### § 760.504  Payment calculation.

(a) TIP payments shall be calculated by multiplying the following national payment rate for the applicable tier by the number of eligible acres, excluding but not limited to such things as drainage ditches and canals, in a stand of fruit trees, bushes, or vines by the producer's share in such crop:

(1) Tier I—$750;
(2) Tier II—$300;
(3) Tier III—$200; and
(4) Tier IV—$90.

(b) If the actual expenses incurred for damage are greater than the value associated with the tier based on the location of the stand, the applicant may submit documentation to FSA to request the stand be placed in the next lower-numbered tier which represents a greater level of loss and a higher payment rate. Regardless of the expenses incurred the stand can only be placed in the next lower-numbered tier.

### Subpart G—Aquaculture Program

### § 760.601  Funds availability.

FSA will provide block grants to the states of Alabama, Florida, Louisiana, Mississippi, North Carolina and Texas where aquaculture was adversely affected by 2005 hurricanes as set forth in § 760.101. Producers in eligible counties in those states who raise aquaculture species in a controlled environment as part of a farming operation and who have not received assistance under other disaster programs for the same aquaculture losses are eligible to receive these funds. Funds provided by a State to a farming operation under such a grant shall not exceed $80,000.

### Subpart H—2006 Livestock Assistance Grant Program

### § 760.701  Funds availability.

FSA will administer a limited program to provide assistance to livestock producers where forage was adversely affected by drought in counties reaching D3 or D4 Drought on the U.S. Drought Monitor, during March 7 to August 31, 2006, in the States of: Alabama, Arizona, Arkansas, Colorado, Florida, Georgia, Kansas, Louisiana, Minnesota, Mississippi, Missouri, Montana, Nebraska, New Mexico, North Dakota, Oklahoma, South Dakota, Texas, Wisconsin and Wyoming. Under the Livestock Assistance Grant Program, FSA will provide grants to the State governments of these States to assist livestock producers who suffered forage losses as part of a farming operation in eligible counties. The amount of each grant will be based on the number of adult beef cattle and sheep from each eligible county uniformly prorated to insure that available funding is not exceeded. Producers in eligible counties in those States who suffered forage losses as part of a farming operation are eligible for assistance under these grants. Among other conditions of these grants, assistance provided by a State under such a grant to an applicant shall not exceed $10,000, except for general partnerships and joint ventures in which case assistance shall not exceed $10,000 times the number of members that constitute the general partnership or joint venture.

Signed in Washington, DC January 4, 2007.
**Teresa C. Lasseter,**
*Administrator, Farm Service Agency.*
[FR Doc. E7–88 Filed 1–8–07; 8:45 am]
**BILLING CODE 3410–05–P**

---

## FEDERAL ELECTION COMMISSION

### 11 CFR Part 104

[Notice 2006—23]

### Statement of Policy: "Purpose of Disbursement" Entries for Filings With the Commission

**AGENCY:** Federal Election Commission.
**ACTION:** Statement of Policy.

**SUMMARY:** Political committees and other persons required to file campaign finance reports with the FEC must itemize certain disbursements and, for each itemized disbursement, must provide information including a brief description of the purpose of the disbursement. The "purpose of disbursement" entry, when considered along with the identity of the disbursement recipient, must be sufficiently specific to make the purpose of the disbursement clear. The guidance below includes a non-exhaustive list of "purpose of disbursement" entries that are generally acceptable, and a non-exhaustive list of terms that are generally not acceptable.

**DATES:** Effective as of January 9, 2007.

**FOR FURTHER INFORMATION CONTACT:** Richard T. Ewell, Attorney, 999 E Street, NW., Washington, DC 20463, (202) 694–1650 or (800) 424–9530, or Debbie Chacona, Branch Chief, Party/Non-Party Branch, Reports Analysis Division, 999 E Street, NW., Washington, DC 20463, (202) 694–1130 or (800) 424–9530.

**SUPPLEMENTARY INFORMATION:** Political committees and other persons required to file campaign finance reports with the FEC must itemize certain disbursements and, for each itemized disbursement, must provide the full name and address of the recipient, the date the disbursement was made, and a brief statement or description of why the disbursement was made. *See* 2 U.S.C. 434(b); 11 CFR 104.3(b)(3) and (4), 104.10(b)(4), 104.17(b)(3) and 300.36(b)(2)(iii). The "purpose of disbursement" entry, when considered along with the identity of the disbursement recipient, must be sufficiently specific to make the purpose of the disbursement clear. 11 CFR 104.3(b)(3)(i)(B) and (4)(i)(A). The Commission's regulation requiring a description of the purpose of each itemized disbursement includes examples of descriptions that are acceptable (*e.g.*, "dinner expenses," "salary," "travel expenses") and examples that are unacceptable (*e.g.*, "advance," "miscellaneous"). Neither list is exhaustive.

The Commission solicited comments on a draft of this policy statement on November 2, 2006. Two comments were received. After reviewing the comments received, the Commission has decided to publish the policy statement with one change. As suggested by a commenter, the Commission has added "Consulting-Political" to the examples of generally insufficient descriptions. In light of this change, the Commission has also added examples of descriptions that would be generally sufficient, such as "Consulting-Media," "Consulting-Fundraising," "Consulting-Polling," "Consulting-Legal" and "Consulting-Get-Out-The-Vote."

The Commission recognizes that the "purpose of disbursement" entries, when linked to information provided about the recipient of the payment, may provide sufficient disclosure. For example, a disbursement to an office supply vendor for the stated purpose of "Supplies" provides adequate and acceptable disclosure, while a disbursement to a committee staff member for the same purpose of "Supplies" would likely trigger a



request for a more complete description of the purpose of the disbursement. In the former case, it is obvious to the reader what type of supplies were purchased, while in the latter case, it is not.

As a rule of thumb, filers should consider the following question: "Could a person not associated with the committee easily discern why the disbursement was made when reading the name of the recipient and the purpose?" For example, a person not associated with the committee could not easily discern the purpose of a disbursement made to a vendor for "Consulting" (unless the vendor's name makes the purpose clear, e.g., Smith Fundraising Consulting, Inc.). As discussed above, however, if the committee were to provide additional detail with respect to the type of consulting the vendor provided (e.g., "Fundraising Consulting"), an unassociated person would have no difficultly discerning the purpose of the disbursement.

All information on campaign finance reports submitted to the FEC, including the entries for "purpose of disbursement," are reviewed by analysts in the Reports Analysis Division (RAD). Some campaign finance reports, particularly those filed by presidential campaign committees accepting public funding, are also reviewed by auditors in the Audit Division. In practice, the RAD analysts and the auditors often encounter "purpose of disbursement" entries that are not listed in the examples contained in 11 CFR 104.3(b)(3) and (4), and receive questions from filers regarding acceptable descriptions. Therefore, in order to provide further guidance to filers and to encourage consistency between filers, the Commission is publishing lists of additional generally acceptable and generally unacceptable descriptions.

The Commission does not intend to request that a committee provide additional information about a purpose of disbursement entry if the committee uses those descriptions listed below as providing sufficient detail. However, if a committee uses a description that is listed as lacking sufficient detail, a RAD analyst may review the report more closely but the Commission would not automatically take any particular action. In most instances, the Commission will merely contact the reporting committee and the committee may then amend its report. In the rare circumstances in which the Commission deems it necessary to pursue the matter further, the Commission will conduct a separate review of the sufficiency of the description of purpose to determine whether it meets the requirements of 11 CFR 104.3(b).

Any future revisions to these lists will be posted on the Commission's Web site at *http://www.fec.gov/law/policy.shtml*. Committees with questions can contact either their assigned RAD analyst (phone: (800) 424–9530 (press 5)) or the FEC Information Division (phone: (800) 424–9530 (press 6); e-mail: *info@fec.gov*).

*Descriptions of purpose that provide sufficient detail:*
- "Salary" for a disbursement to a staff member.
- "Media" for a disbursement to a television or radio communication company.
- "Polling" for a disbursement to a research/communications company.
- "Travel," "Travel Expenses," or "Travel Expense Reimbursement" for a disbursement to a staff member.
- "Printing" for a disbursement to a printing company.
- "Phone Banks" for a disbursement to a vendor providing phone bank services.
- "Dinner Expense" for a disbursement to a restaurant.
- "Catering Cost" for a disbursement to a hotel or restaurant where a fundraiser was held.
- "Party Fees" or "Party Annual Dues" for a disbursement to a National Party Committee for their annual dues.
- "Exit Polling," "Door-to-Door Get-Out-the-Vote," "Get-Out-the-Vote Phone Calls," or "Driving Voters to the Polls" to individuals or vendors contracted for get-out-the-vote or voter registration activity.
- "Supplies" for a disbursement to an office supply vendor.
- "Consultant-Media," "Consultant-Fundraising," "Consultant-Get-Out-The-Vote," "Consultant-Legal," or "Consultant-Polling" for a disbursement to a consultant or consulting company.

*Descriptions of purposes that generally lack sufficient detail:*

Administrative Expenses
Admin.
Advance
Bonus
Bounty
Campaign Expense
Campaign Material
Charges
Collateral
Collateral Materials
Commission
Compensation (*other than committee staff*)
Consultant
Consultant-Political
Consulting
Consulting Non-FEA
Consulting Service
Contract
Contract Labor
Contractual Services
Convention Expenses
Convention Services
Costs
Delegate
Delegate Expenses
Design
Discount Fees
Election Day Expense
Entertainment
Event
Event Expense
Event Reimbursement
Event Supplies (*if to an individual*)
Expenses
Expense Reimbursement
Fees
Fundraising (*if to an individual*)
Fundraising Event
Fundraising Expense (*if to an individual*)
Fundraising Fees (*if to an individual*)
Fundraising Supplies (*if to an individual*)
General Advice
General Consulting
Generic Campaign Activity
Generic Consulting
Get-Out-The-Vote or GOTV
GOTV Expenses
GOTV Labor
Invoice
Labor
Literature
Meeting (*if to an individual*)
Meeting Expenses (*if to an individual*)
Meeting Supplies (*if to an individual*)
Miscellaneous or Misc.
Miscellaneous Expense
Office Expense (*if to an individual*)
Office Services
Outside Services
Operating Expenses
Other Expenses
Production
Professional Fees
Professional Fees—Consulting
Professional Services
Promotional Material
Publication
Push Card
Reimbursement
Rendered Service
Services
Services Rendered
State Convention
Supplies (*if to an individual*)
Voter Bounty
Voter Contact
Voter Drive
Voter Identification or Voter ID
Voter Registration
Worker

This **Federal Register** notice represents a general statement of policy

announcing the general course of action that the Commission intends to follow. This policy statement does not constitute an agency regulation requiring notice of proposed rulemaking, opportunities for public participation, prior publication, and delay in effective date under 5 U.S.C. 553 of the Administrative Procedure Act ("APA"). As such, it does not bind the Commission or any member of the general public. The provisions of the Regulatory Flexibility Act, which apply when notice and comment are required by the APA or another statute, are not applicable.

Dated: December 27, 2006.

**Robert D. Lenhard,**

*Vice Chairman, Federal Election Commission.*

[FR Doc. E7–65 Filed 1–8–07; 8:45 am]

**BILLING CODE 6715–01–P**

# DEPARTMENT OF TRANSPORTATION

## Federal Aviation Administration

### 14 CFR Part 39

[Docket No. FAA–2005–22696; Directorate Identifier 2005–SW–22–AD; Amendment 39–14877; AD 2007–01–06]

RIN 2120–AA64

### Airworthiness Directives; Bell Helicopter Textron Canada Model 206A, B, L, L–1, L–3, and L–4 Helicopters

**AGENCY:** Federal Aviation Administration, DOT.

**ACTION:** Final rule.

**SUMMARY:** This amendment supersedes an existing airworthiness directive (AD) for the specified Bell Helicopter Textron Canada (BHTC) model helicopters. The existing AD currently requires certain inspections and checks of the tail rotor blade (blade) for a deformation, a crack, and a bent or deformed tail rotor weight (weight). Also, that AD requires, before further flight, replacing each blade with an airworthy blade if a deformation, a crack, or a bent or deformed weight is found. This action contains the same actions as the existing AD and also adds to the applicability certain serial-numbered blades inadvertently omitted from the current AD. This action also requires replacing each affected blade, which is a terminating action. This amendment is prompted by three reports of skin cracks originating near the blade trailing edge balance weight. The actions specified by this AD are intended to prevent blade failure and subsequent loss of control of the helicopter.

**DATES:** Effective February 13, 2007.

**ADDRESSES:** You may get the service information identified in this AD from Bell Helicopter Textron Canada, 12,800 Rue de l'Avenir, Mirabel, Quebec J7J1R4, telephone (450) 437–2862 or (800) 363–8023, fax (450) 433–0272.

### Examining the Docket

You may examine the docket that contains this AD, any comments, and other information on the Internet at *http://dms.dot.gov,* or at the Docket Management System (DMS), U.S. Department of Transportation, 400 Seventh Street, SW., Room PL–401, on the plaza level of the Nassif Building, Washington, DC.

**FOR FURTHER INFORMATION CONTACT:**
Sharon Miles, Aviation Safety Engineer, FAA, Rotorcraft Directorate, Regulations and Guidance Group, Fort Worth, Texas 76193–0111, telephone (817) 222–5122, fax (817) 222–5961.

**SUPPLEMENTARY INFORMATION:** A proposal to amend 14 CFR part 39 by superseding AD 2004–24–08, Amendment 39–13884 (69 FR 69810, December 1, 2004), for the specified BHTC model helicopters was published in the **Federal Register** on October 17, 2005 (70 FR 60246). This action contains the same actions as the existing AD. Also, when we issued AD 2004–24–08, we intentionally did not include the long-term requirement (no later than April 27, 2007) for removing and sending the affected blades to Rotor Blades, Inc. as specified by the manufacturer. We are including a long-term requirement in this AD that the affected blades be replaced on or before April 27, 2007, as terminating action. Additionally, in AD 2004–24–08, we inadvertently omitted blade serial numbers 10102 through 10114 from the applicability. We are correcting that oversight with this action.

Since issuing AD 2004–24–08, BHTC has issued Alert Service Bulletin 206–04–100 for Bell Model 206A and B helicopters, and 206L–04–127 for Bell Model 206L series helicopters, both Revision C, both dated March 5, 2005 (ASB). These ASBs add two warnings in the compliance section specifying returning the blade for balancing to Rotor Blades, Inc., and introduce new skin damage limits that supersede the previous damage limits. The ASB also gives a new address for Rotor Blades Inc.

Transport Canada, the airworthiness authority for Canada, notified the FAA that an unsafe condition may exist on these helicopter models. Transport Canada advises of three reports of skin cracks originating near the blade trailing edge balance weight. Two of the occurrences caused a loss of the weight and a strip of material along the trailing edge leading to an imbalance, which caused the fracture of three of the four tail rotor gearbox attachments. One of these occurrences resulted in the gearbox shifting that caused failure of the drive shaft and resulting loss of yaw control. Transport Canada issued AD No. CF–2004–05R1, dated June 28, 2004, to ensure the continued airworthiness of these helicopters in Canada.

These helicopter models are manufactured in Canada and are type certificated for operation in the United States under the provisions of 14 CFR 21.29 and the applicable bilateral agreement. Pursuant to the applicable bilateral agreement, Transport Canada has kept the FAA informed of the situation described above. The FAA has examined the findings of Transport Canada, reviewed all available information, and determined that AD action is necessary for products of these type designs that are certificated for operation in the United States.

Interested persons have been afforded an opportunity to participate in the making of this amendment. No comments were received on the proposal or the FAA's determination of the cost to the public. The FAA has determined that air safety and the public interest require the adoption of the rule as proposed, except for a change in paragraph (f) of the AD to add additional contact information. This change will neither increase the economic burden on any operator nor increase the scope of the AD.

The FAA estimates that this AD will:
• Affect 2194 helicopters of U.S. registry,
• Take about ¼ work hour for a blade check or inspection, and
• Take 3 work hours to replace a blade at an average labor rate of $65 per work hour.
• Cost about $5848 per helicopter. (In its ASB, the manufacturer states it will give warranty credit based on hour usage on the blade with remaining life hours and other restrictions.)

Based on these figures, we estimate the total cost impact of the AD on U.S. operators to be $19,989,973. Costs assume—200 pilot checks, 26 mechanic inspections, and one blade replacement for 90 percent of the fleet with a nonconforming blade.

### Regulatory Findings

We have determined that this AD will not have federalism implications under Executive Order 13132. This AD will not have a substantial direct effect on