

FEDERAL ELECTION COMMISSION
Washington, DC 20463

December 22, 1983

CERTIFIED MAIL
RETURN RECEIPT REQUESTED

ADVISORY OPINION 1983-25

David M. Ifshin
General Counsel
Mondale for President
2201 Wisconsin Avenue, N.W.
Washington, D.C. 20007

Dear Mr. Ifshin:

This refers to your letter dated August 29, 1983, as supplemented by two letters dated December 1, 1983, to the Chairman and General Counsel of the Commission respectively, requesting an advisory opinion concerning application of the Federal Election Campaign Act of 1971, as amended ("the Act"), and Commission regulations to a proposed contract for media services between Mondale for President, Inc. ("the Committee") and Consultants '84, Inc. ("Consultants").

Your August 29 letter summarizes the recordkeeping and reporting procedures which are proposed to be used in connection with Committee payments made to Consultants pursuant to a media services contract that is presently under negotiation with Consultants. You request an advisory opinion "confirming" the Committee's opinion that these procedures, if followed, will satisfy the requirements of the Act and Commission regulations. Your letter explains that the proposed contract will provide for Consultants to furnish media related services, including media production and the purchase of television and radio time and newspaper space, during the 1984 Democratic presidential primary campaign.

According to your request, Consultants '84, Inc., initially operated as a partnership but is now organized as a corporation (with perpetual existence) under Texas law. Its two principals are "recognized experts" with extensive experience in the field of election campaign media. You state that during 1983 these two individuals provided consulting services to the Committee in their "individual capacity" and were compensated under a "monthly fee arrangement." Your request further explains that a contract will be formed between the Committee and Consultants



EXHIBIT
B

with respect to the 1984 campaign period, but that Consultants also expects to have several other media contracts with other candidates or businesses in 1984. The Committee contract will not require Consultants to devote its "full efforts" to the Committee during the contract term. This contract, you state, will represent the predominate, if not exclusive, portion of the Committee's media campaign during the 1984 presidential primaries.

The current negotiations with Consultants have not yet resulted in final determinations as to the "exact size and nature" of the Committee's contract. However, you propose that each payment made by the Committee to Consultants, pursuant to the contract, will be reported as an expenditure to Consultants during each reporting period, "without further itemization." Such reporting, you assert, will be made pursuant to 2 U.S.C. 434(b) and 11 CFR 104.3. In addition, you explain that to satisfy the recordkeeping requirements, the Committee plans to retain only Consultants "invoices and the Committee's cancelled checks issued in payment." Consultants has further agreed to maintain, and make available for audit documentation, records of "all production and placement costs billed to the Committee in accordance with 11 CFR 9033.1(b)(1) pertaining to the recordkeeping requirements for agents of the Committee."

On the basis of the described factual situation, you ask whether the proposed reporting and recordkeeping procedures of the Committee, as regards its payments to Consultants, would satisfy the requirements of the Act and Commission regulations. The Commission concludes that the Committee may report its payments to Consultants as expenditures. Consultants payments to other persons, which are made to purchase services or products used in performance of Consultants' contract with the Committee, do not have to be separately reported. The Act and regulations do, however, require that the Committee include on its reports an adequate description of the purpose of each expenditure to Consultants. 2 U.S.C. 434(b)(5)(A), 11 CFR 104.3(b)(4)(i).

The Act requires that reports filed by an authorized candidate committee state the name and address of any person to whom an expenditure is made (in an aggregate amount over $200 in the calendar year) by the reporting committee to meet an operating expense of the committee (or candidate). The date, amount, and purpose of such an operating expenditure shall also be disclosed. 2 U.S.C. 434(b)(5)(A). Commission regulations reiterate this provision of the Act and give examples of both proper and inadequate descriptions of the purposes of a committee's operating expenses. 11 CFR 104.3(b)(4)(i)(A). The regulations do not define the term "operating expense" although the examples listed therein illustrate the kinds of operating expenditures that are typical of an authorized campaign committee. The description "media" is considered as a satisfactory description for a payment that is, in fact, made for media, such as the purchase of media time or media space. The regulations are silent with respect to any definition or description of the person to whom an expenditure is made. Moreover, they do not address the concepts of ultimate payee, vendor, agent, contractor, or subcontractor in this context.

As supplemented by letter of December 1, 1983, your request indicates that the Committee will report specific information describing the various purposes of each expenditure made to Consultants: such as media consulting fees, media photocopy expenses, media buys, media production, and other similar descriptive language that reflects the actual purpose of each Committee expenditure to Consultants. Accordingly, with respect to the reporting procedure set

forth in your request, the Commission is of the opinion that the Committee may report its payments to Consultants as expenditures without further itemization of payments made by Consultants to others.

The Commission considers several facts, as related in your request, to be significant in this situation. As a corporation, Consultants has a legal existence that is separate and distinct from the operations of the Committee, and its principals do not hold any staff position with the Committee. The Committee is conducting arms-length negotiations with Consultants that will result in formation of a final contract. Consultants will not be required to devote its "full efforts" to the contract with the Committee and indeed expects to have other election campaign media contracts, as well as contracts with business entities, during and after the 1984 primary election campaign period. The Committee will have no interest in these contracts. On the basis of the foregoing facts, the Commission agrees that Consultants may be viewed as a vendor of media services to the Committee, and payments to Consultants may be reported as Committee expenditures without further itemization of other entities that receive payments from Consultants in connection with its services under the Committee contract.

With respect to recordkeeping, the Commission notes your statement that Consultants will maintain, and make available as audit documentation, records of all production and placement costs billed to the Committee by Consultants. The Commission emphasizes that the contemplated contract may not abrogate or modify in any respect the Committee's obligations with respect to compliance with the various recordkeeping requirements of the Act (including the Presidential Primary Matching Payment Account Act) and Commission regulations thereunder. See 2 U.S.C. 432(c)(5), 26 U.S.C. 9031, et seq. and 11 CFR 102.9, 106.2, 9033.1(b), 9033.11, as amended effective April 4, 1983, 48 Fed. Reg. 5235, 5238.

This response constitutes an advisory opinion concerning application of the Act, or regulations prescribed by the Commission, to the specific transaction or activity set forth in your request. See 2 U.S.C. 437f.

        Sincerely yours,

        (signed)

        Danny L. McDonald
        Chairman for the Federal Election Commission