

**FEDERAL ELECTION COMMISSION**
WASHINGTON, D.C. 20463

July 16, 2013

**Via First Class Mail & Facsimile**
Fax No.: (202) 457-6315

William J. McGinley, Esq.
Patton Boggs LLP
2550 M St., NW
Washington, DC 20037-9996

Re: MUR 6510
Kirk For Senate, *et al.*

Dear Mr. McGinley:

On November 22, 2011, the Federal Election Commission notified your clients, Senator Mark S. Kirk and Kirk for Senate and Paul Kilgore, in his official capacity as treasurer, (the "Committee") of a Complaint alleging violations of certain sections of the Federal Election Campaign Act of 1971, as amended (the "Act"). On July 9, 2013, the Commission found, on the basis of the information in the Complaint, and information provided by your clients, that there is no reason to believe Kirk and the Committee violated 2 U.S.C. § 439a(b) by converting campaign funds to "personal use" based on the theory that Dorothy McCracken was a "family member" of Kirk, and that she, through Van Ness Communications and The Patterson Group, did not provide *bona fide* services at fair market value to the campaign, or through payments for travel, meals, transportation, lodging, a dental bill, clothing and cosmetics. The Commission further determined to dismiss the allegations that Kirk and the Committee violated 2 U.S.C. § 439a(b) by converting campaign funds to "personal use" through payment for a gym membership. *See Heckler v. Chaney*, 470 U.S. 821 (1985). Last, the Commission found no reason to believe that Kirk and the Committee violated 2 U.S.C. § 434(b). Accordingly, the Commission closed its file in this matter.

Documents related to the case will be placed on the public record within 30 days. *See* Statement of Policy Regarding Disclosure of Closed Enforcement and Related Files, 68 Fed. Reg. 70,426 (Dec. 18, 2003) and Statement of Policy Regarding Placing First General Counsel's Reports on the Public Record, 74 Fed. Reg. 66132 (Dec. 14, 2009). The Factual and Legal Analysis, which explains the Commission's findings, is enclosed for your information.



EXHIBIT C

If you have any questions, please contact Christine C. Gallagher, the attorney assigned to this matter at (202) 694-1650.

Sincerely,

William A. Powers
Assistant General Counsel

Enclosure
Factual and Legal Analysis

# FEDERAL ELECTION COMMISSION
# FACTUAL AND LEGAL ANALYSIS

**Respondents:** Kirk for Senate and Frank Considine,         **MUR 6510**
in his official capacity as treasurer
Senator Mark Kirk
Dorothy McCracken
Van Ness Communications
Robert Eugene Vail, Jr.
The Patterson Group

## I. INTRODUCTION

This matter was generated by a Complaint filed with the Federal Election Commission by Kimberly Vertolli. *See* 2 U.S.C. § 437g(a)(1). Kirk for Senate and Frank Considine in his official capacity as treasurer, (the "Committee"), was Senator Mark Kirk's principal campaign committee for the Senate race in Illinois during the 2010 election. Complainant, who is Kirk's ex-wife, alleges that between 2008 and 2011, Respondents "willfully or unwittingly misused, converted" or failed to report between $50,000 and $1.8 million of the Committee's campaign funds, in violation of the Federal Election Campaign Act of 1971, as amended, (the "Act"), and Commission regulations. The Complaint's theory that Respondents violated 2 U.S.C. § 439a(b) by converting campaign funds to "personal use" is based on the theory that Dorothy McCracken, allegedly Kirk's girlfriend during the relevant time period, was a "family member" of Kirk, and that she, through her company, Van Ness Communications, and her former business partner, Robert E. Vail's company, The Patterson Group, did not provide *bona fide* services at fair market value to the campaign; and that the Committee used campaign funds to reimburse McCracken's personal expenses, including a gym membership, travel, meals, transportation, lodging, a dental bill, clothing, and cosmetics. The Complaint further alleges that the Committee violated 2 U.S.C. § 434(b) by failing to itemize payments that its media vendor, Patterson Group, made to

its subcontractor, Van Ness Communications, on its reports filed with the Commission.

Respondents filed a joint Response generally denying the allegations.

Based on the record here, the Commission determined to find no reason to believe that Kirk for Senate and Frank Considine in his official capacity as treasurer, Senator Mark Kirk, Dorothy McCracken, Van Ness Communications, Robert Eugene Vail, Jr., and The Patterson Group, violated 2 U.S.C. § 439a(b) by converting campaign funds to "personal use." The Commission further determined to dismiss the allegations that Kirk for Senate and Frank Considine in his official capacity as treasurer, Senator Mark Kirk, Dorothy McCracken, Van Ness Communications, Robert Eugene Vail, Jr., and The Patterson Group, violated 2 U.S.C. § 439a(b) by converting campaign funds to "personal use" through reimbursement for a gym membership. *See Heckler v. Chaney*, 470 U.S. 821 (1985). The Commission also determined to find no reason to believe that Kirk for Senate and Frank Considine in his official capacity as treasurer, violated 2 U.S.C. § 434(b).

II. FACTUAL SUMMARY

According to the Complaint, Dorothy McCracken "steered" the Committee to contract for advertising work with The Patterson Group, the company of her former business partner, Robert Edward Vail, Jr. The Committee allegedly paid Patterson Group $1.8 million in 2009-10 under this contract. Compl. ¶¶ 14, 19 (Nov. 14, 2011). And Patterson Group, in turn, sub-contracted with McCracken's company, Van Ness Communications ("Van Ness"), and paid Van Ness between $50,000 and $200,000 for consultant fees and expenses, which allegedly were passed through Patterson Group and paid for with the Committee's funds, and not reported by the Committee as itemized expenditures to a vendor's sub-contractor. *Id.* ¶¶ 7-8. At least $135,000 of Van Ness's bills, according to Complainant, were for McCracken's personal expenses. *Id.* ¶

20, Ex. D. The Complaint further alleges that after 2009, McCracken shared a residence with Kirk, making her a member of the candidate's family within the meaning of the Commission's personal use regulations. *Id.* ¶¶ 12-13, 22. Finally, the Complaint alleges that even if McCracken provided campaign-related media services in exchange for the payments she received from Patterson Group, her services were not *bona fide* and the payments exceeded the fair market value rate and therefore constituted conversion of committee funds to personal use. *Id.* ¶¶ 12-13, 17, 22.

Kirk and the Committee, Vail, and McCracken each responded separately. Committee/Kirk Resp. (Jan. 4, 2012); Vail Resp. (Jan. 6, 2012); McCracken Resp. (Jan. 3, 2012). Their Responses maintain that Patterson Group and McCracken provided *bona fide* services. Committee/Kirk Resp. at 1, 3-4; Vail Resp. at 2; McCracken Resp. at 1. Kirk and the Committee maintain that the Committee properly disclosed all payments to Patterson Group and the Committee was not obligated to disclose any payments that the Patterson Group made to subcontractors. Committee/Kirk Resp. at 2-3. None of the Responses addressed the specific items that the Complaint alleges were McCracken's personal expenses paid by the Committee.

According to the Complaint, McCracken, Kirk, Vail, and the Committee violated the Act by "concoct[ing] a scheme" to impermissibly convert to personal use committee funds from Kirk's principal campaign committee for the 2010 Illinois Senate race. Compl. ¶¶ 14-15. The Complaint further alleges that in 2009, McCracken and Kirk cohabitated at Kirk's Illinois residence; therefore, the $135,000 in campaign funds paid to her company Van Ness through

1   Patterson Group for her salary and personal expenses while she accompanied Kirk during his

2   senate campaign were prohibited personal use of campaign funds. Compl. ¶¶ 17, 20.[1]

3   McCracken states that she lived in Arlington, Virginia throughout the Senate campaign,

4   "working on site as needed at The Patterson Group and the campaign in Illinois." McCracken

5   Resp. at 1. Respondents maintain that the Committee received *bona fide* services from Patterson

6   Group for the work it performed from July 2009 through September 2010; that Patterson Group

7   and Vail had provided media services to past Kirk campaigns, which shows that they were not

8   retained by the Committee as a result of any "scheme;" and that McCracken, through Patterson

9   Group, assisted "with the media placement services with the input she received from the

10  campaign during regular conference calls and meetings with Campaign staff and other vendors."

11  Committee/Kirk Resp. at 1, 3-4; Vail Resp. at 1-2; McCracken Resp. at 1-2.

12  **A. McCracken's Reimbursed Expenses**

13  McCracken's reimbursed expenses — which were not addressed by the Responses —

14  included travel, meals, transportation, lodging, and other personal expenses, including teeth

15  whitening, gym membership, cosmetics, and clothing. Compl., Exs. C, D. Exhibit C includes

16  Van Ness invoices to Patterson Group, while Exhibit D purports to show various vendor bills and

17  receipts to McCracken, including for travel, meals, transportation, and lodging. *Id.*, Ex. D. at 78-

18  100. Other reimbursed expenses include:

19  - a "Membership Contract," with the handwritten notation "KFS billed" at the top,
20    between a health and fitness center and McCracken dated July 8, 2010, for an

---

[1] In further support of her allegation that Respondents conspired to violate the Act, the Complaint alleges that Vail and McCracken were business partners prior to 2008 (and throughout Kirk's senate campaign) in a company called Arcadian Partners, and that this company's website no longer includes McCracken's biographical summary; that Patterson Group is not registered to do business in Illinois; and, that according to the Virginia State Corporation Commission, McCracken appears to run Van Ness from her home in Arlington, Virginia. Compl. ¶¶ 9, 10, 19.

enrollment fee of $50 and 11 sessions of personal training costing $566.50, payable at $79 per month beginning August 1, 2010, Compl., Ex. D. at 103-04;

- a Marshall's receipt dated August 26, 2010, for $14 in "accessories" and $20 for "ladies ftwr," Compl., Ex. D. at 106;

- an "Attending Doctor's Statement" and "Statement of Services Rendered" to McCracken, dated November 18, 2010, totalling $425, for "whitening gel 10%" and various dental services, Compl., Ex. D. at 109-10;

- a Target receipt, dated August 1, 2010, that includes a charge for "health-beauty-cosmetics" of $9.54, Compl., Ex. D. at 105; and a CVS receipt dated June 19, 2010, containing charges for several cosmetic and personal grooming items at a combined cost of $154.21, Compl., Ex. D. at 101.

- Two Costco receipts, one whose date is partially obscured and one dated August 13, 2010 for what appear to be household food items, Compl. Ex. D, at 89, 108.[2]

**B. Media Services Provided to the Committee by Patterson Group and Van Ness**

The Complaint generally questions whether McCracken provided *bona fide* services to the campaign. Compl. ¶¶ 16-17, 22. In response, the Committee provided a sworn affidavit from its 2010 senate campaign manager Eric Elk stating that the Committee hired Patterson Group as a vendor to provide various media and advertising services for Kirk's 2010 Illinois race. Committee/Kirk Resp., Ex. A. ¶¶ 3-4.[3] Elk also states that McCracken, through Patterson Group, "participated in daily and weekly calls discussing [the Committee's] message management, content for radio and TV ads, and when the campaign should deliver specific messages to voting groups" and "participated in discussions reviewing statewide polling data, editorial board and speech preparation, and other strategic message development, including

---

[2] The Complaint also alleges that Kirk may have violated the House Ethics Rules by accepting a trip to England and Greece during November 2008, paid for by McCracken. Compl. ¶ 11, Exs. A, K. There is no allegation or information that any campaign funds were used in connection with this activity. The Commission has no jurisdiction over violations of House Ethics Rules, and therefore, does not address this allegation.

[3] The Committee asserts that from July 2009 through September 2010, Patterson Group placed media, and provided schedules and suggestions for "the best times for ads to air for greatest impact and [to] make the most efficient use of campaign funds." Committee/Kirk Resp., Ex. A. ¶¶ 3-4.

1   working with Mr. Vail concerning when and where to deliver [the Committee's]

2   Communications." Committee/Kirk Resp., Ex. A. ¶ 5.

3   Vail — sole proprietor of Patterson Group since 1998 — confirms the Committee's

4   characterization of Patterson Group's role. Vail Resp. at 1-2. Vail also states that he met Kirk

5   and McCracken in 1999, when, as a media buyer and planner, he solicited work from Kirk's

6   congressional campaign and that he worked on Kirk's subsequent five campaigns in that

7   capacity. *Id.* at 1-2. Vail's Response acknowledges that Patterson Group contracted with a sub-

8   vendor, Van Ness, owned by McCracken. *Id.* at 2. According to Vail, McCracken supervised

9   the "radio and television advertising development and production" for Kirk's 2010 Senate

10  campaign and provided Patterson Group with guidance on media selection strategies and

11  advertising markets. *Id.* at 2. Vail states that he and McCracken maintained nearly daily contact

12  during the assignment. *Id.*

13  In her Response, McCracken states that while working with Patterson Group, she

14  "prepared strategic and crisis communication plans, provided branding and marketing counsel,

15  including message development, media planning, placement and scheduling, and rapid response

16  advice," and that she "worked across TV, radio, print and internet platforms," "recruited key

17  members of the campaign's strategic communications team," and participated in its daily

18  strategy call and nearly all of its key meetings, "working well in excess of a 40-hour workweek,

19  many times seven days a week." McCracken Resp. at 1.

20  According to McCracken, Patterson Group paid her a monthly retainer of $10,000 (less in

21  August-October 2009), with reimbursements for agreed-upon expenses related to campaign

22  travel and other activities. McCracken Resp. at 1. She provided the following chart showing the

23  amount of consulting fees and expenses that Van Ness invoiced to Patterson Group:

| Date | Expenses Invoiced to Patterson Group | Consulting Fees Invoiced to Patterson Group |
|---|---|---|
| Aug. 16, 2009 | $1,914.34 | $2,500 |
| Sept. 26, 2009 | $3,807.01 | $2,500 |
| Oct. 26, 2009 | $1,030.26 | $5,000 |
| Nov. 25, 2009 | $2,569.50 | $10,000 |
| Dec. 13, 2009 | $4,161.29 | $10,000 |
| Jan. 11, 2010 | $1,438.16 | $10,000 |
| Feb. 13, 2010 | -------------- | $10,000 |
| Mar. 2, 2010 | $4,937.17 | $10,000 |
| Apr. 1, 2010 | $2,634.55 | $10,000 |
| May 3, 2010 | $1,160.37 | $10,000 |
| June 1, 2010 | -------------- | $10,000 |
| July 1, 2010 | $6,392.67 | $10,000 |
| July 30, 2010 | $3,537.00 | ---------- |
| Aug. 10, 2010 | -------------- | $10,000 |
| **Sub Totals** | $33,582.32 | $110,000 |
| **Grand Total** | | $143,582.32 |

*Id.* at 1-2.[4]

Regarding these payments, the Complaint alleges that McCracken "was compensated at a level far exceeding the market value of her 'services'" given her allegedly "low salary history, lack of education and experience, and exorbitant pay, relative to [other] professionally credentialed, educated, yet lower paid" Committee consultants. Compl. ¶¶ 16-17, 22. In

---

[4] Patterson Group's last payment to McCracken was in September 2010. *Id.* McCracken's Response does not describe or provide the underlying documentation for her invoiced expenses. None of the Responses provides any other documentation relating to Patterson Group's payments to Van Ness.

rebuttal, McCracken states that she has served as a public relations and political consultant for a variety of clients for over 25 years. McCracken Resp. at 1. She worked on Kirk's first congressional campaign in 1999-2000 and ran his district office communications. *Id.*

The Complaint further alleges that "[w]hatever legitimate 'services' [McCracken] did perform, [they] appear to have been purposely concealed from public disclosure," because they were not reported by the Committee. Compl. ¶ 22. In response, Kirk and the Committee maintain that the Committee properly disclosed payments to its media vendor, Patterson Group, with which the Committee contracted, and that Patterson Group used a sub-vendor, Van Ness, to assist with its media placement and message management service. Committee Resp. at 2-3. In addition to the Patterson Group, in August 2010, the Committee hired another media vendor, Mentzer Media, to assist with strategic political campaign and placement. Committee/Kirk Resp., Ex. A. ¶ 4. The Committee asserts that "[t]here is no credible basis for a reporting violation against the campaign since there is no statutory, regulatory or other Commission precedent requiring the Campaign to disclose payments made by a primary vendor to that vendor's sub-vendors." *Id.* at 3.

III. **LEGAL ANALYSIS**

A. **There Is No Reason to Believe that Payments for McCracken's Services and Other Expenses Violated the Act's "Personal Use" Prohibitions**

The Act prohibits the conversion of campaign funds to personal use. *See* 2 U.S.C. § 439a(b)(1). Generally, "personal use" is defined as "any use of funds in a campaign account of a present or former candidate to fulfill a commitment, obligation or expense of any person that would exist irrespective of the candidate's campaign or duties as a Federal officeholder." 11 C.F.R. § 113.1(g); *see* 2 U.S.C. § 439a(b)(2).

1. Payments for Services

The personal use restriction does not apply to *bona fide* payments for services at fair market value. *See* 11 C.F.R. § 113.1(g). The allegations that McCracken did not provide *bona fide* services at fair market value rests primarily on Complainant's assessment of McCracken's credentials and her relationships with Kirk and Vail, the sole proprietor of Patterson Group. Without more, these assertions do not provide reason to believe that the payments for McCracken's services constituted personal use. To the contrary, the Response of the Committee (attaching a sworn affidavit from Kirk's campaign manager, Elk) and the notarized Responses of Vail and McCracken detail McCracken's prior experience in public relations and political consulting, her past work for Kirk before he ran for the U.S. Senate, and the services she provided to the Senate campaign through Patterson Group. Vail Resp. at 1; Committee Resp. at 3-4 & Ex. A; McCracken Resp. at 1. Vail and the Committee's Responses also describe a long history of Vail's work for Kirk even before Kirk ran for the U.S. Senate, and Vail's longstanding professional relationship with McCracken. Vail Resp. at 1; Committee Resp. at 3-4.

Based on the information before the Commission, there is no reason to believe Kirk for Senate and Frank Considine in his official capacity as treasurer, Senator Mark Kirk, Dorothy McCracken, Van Ness Communications, Robert Eugene Vail, Jr., and The Patterson Group, violated 2 U.S.C. § 439a(b) by converting campaign funds to "personal use" with respect to payments Patterson Group for McCracken's services.[5]

---

[5] The Complaint raises the question of whether McCracken was Kirk's "family member" as defined at 11 C.F.R. § 113.1(g)(7)(iv). Because the Commission concludes that there is no reason to believe that McCracken did not provide *bona fide* services and fair market value to the Committee, the Commission does not reach this issue.

2. <u>Payments for Travel, Meals, Transportation and Lodging</u>

The Commission determines on a case-by-case basis whether expenses such as meals, travel, transportation and lodging fulfill a commitment, obligation or expense that would exist irrespective of the candidate's campaign or duties as a federal officeholder, and are therefore personal use. *See* 11 C.F.R. § 113.1(g)(1)(ii); Explanation and Justification for Regulations on Personal Use of Campaign Funds, 60 Fed. Reg. 7,862 (Feb. 9, 1995).

Most of the documents allegedly related to the costs of McCracken's travel, meals, transportation and lodging attached to the Complaint reflect travel to and from Illinois during the period she worked for Patterson Group. Compl., Ex. D at 78-88.[6] There is no available information to support the Complainant's assertion that these expenses were not campaign related, and thus incidental to the provision of *bona fide* services, as described above.

Therefore, there is no reason to believe that Kirk for Senate and Frank Considine in his official capacity as treasurer, Senator Mark Kirk, Dorothy McCracken, Van Ness Communications, Robert Eugene Vail, Jr., and The Patterson Group, violated 2 U.S.C. § 439a(b) by converting campaign funds to "personal use" through payments for travel, meals, transportation, and lodging.

3. <u>Payments for *Per Se* Personal Use</u>

The Commission's personal use regulation enumerates certain expenses that are considered *per se* "personal use" and thus prohibited. 11 C.F.R. § 113.1(g)(1)(i). *Per se*

---

[6] The only exceptions are receipts relating to a California trip from December 6 to 9, 2009. While Kirk's or McCracken's complete schedules for that period are not available, public information indicates that Kirk attended a roundtable discussion sponsored by Gen Next on December 7, 2009, in Newport Beach, California. *See* http://webcache.googleusercontent.com/search?hl=en&gbv=2&gs_l=hp.3...
56091230311012353114114110132101011411859171j21910.frgbld.&q=cache:RawasalFpgsJ:http://www.gen-next.org/programs/past_programs?datemin=1230796800&datemax=1262332800+kirk+gen+next+newport+beach+december+2009&ct=clnk.

1  "personal use" includes household food items and supplies, clothing (other than items of *de*

2  *minimis* value) and payments to a health club or recreational facility. *See* 11 C.F.R.

3  § 113.1(g)(1)(i)(A),(C),(G). In support of Complainant's allegations that Committee funds may

4  have been used to pay McCracken for specific items that constituted "personal use,"

5  Complainant provided bills and receipts for items that, if paid for by the Committee, would be

6  "*per se* personal use." *See* Compl., Ex. D; *see also* 2 U.S.C. § 439a(b); 11 C.F.R.

7  § 113.1(g)(1)(i)(A),(C),(G).

8  In most cases, however, there is no indication that the Committee actually paid the

9  relevant expenses. In fact, a number of the receipts are for expenses incurred after McCracken

10  purportedly stopped doing work for the Committee, in August 2010. *See* McCracken Resp. at 1-

11  2.

12  Therefore, there is no reason to believe that Kirk for Senate, Frank Considine in his

13  official capacity as treasurer, Dorothy McCracken, Van Ness Communications, Robert Eugene

14  Vail, Jr., and the Patterson Group, violated 2 U.S.C. § 439a(b) by converting campaign funds to

15  "personal use" through payment for items and services that would constitute *per se* personal

16  use.[7]

**B. The Committee Properly Disclosed Its Disbursements to Patterson Group**

19  The Complaint further alleges that Kirk, McCracken, and Vail may have deliberately

20  concealed the recipients of the Committee's campaign disbursements and expenditures based on

21  the Committee's failure to disclose Patterson Group's payments to Van Ness in its 2009-10

22  filings with the Commission. Compl. ¶¶ 5, 8, 18. But neither the Act nor the Commission's

---

[7] One receipt — a gym membership contract — includes the handwritten notation "KFS billed" on the document. Compl., Ex. D. at 103-04. Even assuming that "KFS" means "Kirk for Senate," only the $50 initiation fee was clearly incurred before August 2010. In light of these facts, the Commission has determined to exercise its prosecutorial discretion and dismiss the allegations related to this expense. *See Heckler v. Chaney*, 470 U.S. 821 (1985).

1. regulations require authorized committees to report expenditures or disbursements to their
2. vendors' sub-vendors. *See* 2 U.S.C. § 434(b)(5)(A); 11 C.F.R. § 104.3(b)(4)(i)(A). To the
3. contrary, the Commission has concluded that a committee need not separately report its
4. consultant's payments to other persons — such as those payments for services or goods used in
5. the performance of the consultant's contract with the committee. *See generally* Advisory Op.
6. 1983-25 (Mondale for President).
7. In that advisory opinion, the Commission considered several facts as significant in
8. determining whether the corporation was a vendor of media services: the corporation had a legal
9. existence separate and distinct from the committee; its principals did not hold any staff positions
10. within with committee; the committee and corporation conducted negotiations for the contract at
11. arms-length; the corporation was not required to devote its "full-efforts" to the contract with the
12. committee and expects to have other contracts with other entities; and the committee will have
13. no interest in the other contracts. Advisory Op. 1983-25 at 3.
14. Here, the record reflects that Patterson Group is a vendor of media services and is a
15. separate business entity from the Committee. Vail has been operating Patterson Group as a sole-
16. proprietorship since 1998, well before Kirk's 2010 senate campaign began and before Vail first
17. met Kirk in 1999. Vail first provided media services to Kirk in his 2006 and 2008 congressional
18. campaigns. Vail Resp. at 1; Committee/Kirk Resp. at 3. Vail, as a self-employed media
19. professional, has provided media services to various clients, including national advertising
20. agencies and other political campaigns since the 1970s. Vail Resp. at 1. Vail asserts that,
21. through Patterson Group, he provided media services for another candidate's congressional race
22. in 2010. *Id.* In addition, the Committee asserts that in August 2010, it added another media
23. vendor to the campaign. Committee/Kirk Resp., Ex. A. ¶ 4. The record here shows that

1   Patterson Group was not working exclusively for the Committee in 2010. There is no
2   information available, and the Complaint has not alleged, that Vail held any position on the
3   Committee or that the Committee has any interest in Vail's or Patterson Group's contracts with
4   others. Based on the sworn affidavit of its campaign manager, Elk, averring to the type and
5   scope of the media services performed by Patterson Group for the 2010 senate campaign, and on
6   the Committee's 2010 reports, disclosing payments to Patterson Group from October 2009
7   through August 2010, it appears that the Committee and Patterson Group had entered into an
8   arms-length transaction. Committee/Kirk Resp., Ex. A. ¶¶ 4-5; *see also* Kirk for Senate
9   Amended 2010 12 Day Pre-Primary Report (Mar. 24, 2011); Amended 2010 April Quarterly
10  Report (Sept. 16, 2010); 2010 July Quarterly Report (Jul. 15, 2010); Amended 2010 October
11  Quarterly Report (Feb. 7, 2011).

12  Thus, it appears that Patterson Group functioned as a media vendor, separate and distinct
13  from the Committee. The Committee, therefore, was only required to report and adequately
14  describe disbursements to Patterson Group, and not its sub-contractor Van Ness. *See* Advisory
15  Op. 1983-25.

16  Therefore, there is no reason to believe that Kirk for Senate and Frank Considine in his
17  official capacity as treasurer, violated 2 U.S.C. § 434(b) in connection with its reporting of
18  disbursements to its media vendor.